IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT DOOL, ET AL., )<br>)<br>          Plaintiffs,   )<br>)<br>v.                                )<br>)<br>ANNE BURKE, ET AL.,     )<br>)<br>          Defendants.   )<br>_____) | **CIVIL ACTION**<br><br>No. 10-1286 |

### MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs Robert Dool, Julie Brown, Donald Rosenow, and Thomas Schermuly's motion for a temporary restraining order ("TRO") and a preliminary injunction. (Doc. 5). Defendants have responded (Doc. 9). The court held a status conference on September 10, 2010. Plaintiffs declined to file a reply to defendants' response, properly electing to make a consolidated argument with respect to the TRO and preliminary injunction. Defendants concurred. Following helpful argument and discussion, the matter was taken under advisement. For the reasons stated more fully herein, plaintiffs' motion is denied.

**I.     BACKGROUND**

Plaintiffs bring this action under 42 U.S.C. § 1983 against Anne Burke in her official capacity as chairman of the Kansas Supreme Court Nominating Commission ("the commission"), Kerry McQueen, Patricia Riley, Matthew Keenan, and Jay Fowler in their official capacities as attorney members of the commission, and Carol Green in her official capacity as Clerk of the Kansas Supreme Court. Plaintiffs allege that

Kan. Const. art. III § 5(e) and K.S.A. 20-119 through 123[1] violate the Equal Protection clause and fundamental right to vote under the Fourteenth Amendment.  Specifically, plaintiffs allege that the election of the five lawyer members of the commission, in which only members of the Kansas bar are eligible to vote, violates the Equal Protection Clause.

Kansas Constitution article III § 5 provides, in part:

(a) Any vacancy occurring in the office of any justice of the supreme court and any position to be open thereon as a result of enlargement of the court, or the retirement or failure of an incumbent to file his declaration of candidacy to succeed himself as hereinafter required, or failure of a justice to be elected to succeed himself, shall be filled by appointment by the governor of one of three persons possessing the qualifications of office who shall be nominated and whose names shall be submitted to the governor by the supreme court nominating commission established as hereinafter provided.

*   *   *

(d) A nonpartisan nominating commission whose duty it shall be to nominate and submit to the governor the names of persons for appointment to fill vacancies in the office of any justice of the supreme court is hereby established, and shall be known as the "supreme court nominating commission." Said commission shall be organized as hereinafter provided.

(e) The supreme court nominating commission shall be composed as follows: One member, who shall be chairman, chosen from among their number by the members of the bar who are residents of and licensed in Kansas; one member from each congressional district chosen from among their number by the resident members of the bar in each such district; and one member, who is not a lawyer, from each congressional district, appointed by the governor from among the residents of each such district.

Presently the commission is in the process of reviewing

---

[1] The parties agree that for the purposes of the preliminary injunction, it is unnecessary for the court to discuss the claims regarding Carol Green, whose duties generally are discussed in K.S.A. 20-119 through 123.

applications and interviewing applicants for the open seat on the Kansas Supreme Court created by Chief Justice Robert Davis' retirement and unfortunate death. At the end of September, the commission will submit its three nominees to the governor. Therefore, the parties are in agreement that an expedited briefing schedule is necessary. Defendants will soon file a motion to dismiss and plaintiffs' memorandum in opposition will follow shortly thereafter. The parties agree that the court's ruling on that motion will resolve the case, one way or the other.

**II.   ANALYSIS**

A preliminary injunction is an extraordinary remedy. Schrier v. University Of Co., 427 F.3d 1253, 1258 (10th Cir. 2005). In order for the court to grant a preliminary injunction, plaintiffs must clearly and unequivocally show that: (1) there is a substantial likelihood of success on the merits; (2) they will suffer irreparable injury unless the injunction is issued; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not be adverse to the public interest. "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held[.]'" Id. In this case, there will be no "trial on the merits" in the sense of presentation of contested evidence because of the parties' agreement that the case can be resolved on its merits by the court's ruling on defendants' motion to dismiss.

Three types of preliminary injunctions are disfavored: "'(1) preliminary injunctions that alter the status quo; (2) mandatory

preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" Id. at 1259 (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)).

Here, plaintiffs are attempting to alter the status quo. "Injunctions that disturb the status quo alter the parties existing relationship. 'The status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights.'" Schrier, 427 F.3d at 1259. The names of the applicants are before the commission which presumably has met or soon will meet to select the three nominees. The parties agreed that granting the injunction will stop the selection process entirely, i.e. the commission cannot proceed with just the four remaining non-lawyer members.[2]

Plaintiffs have not focused on their burden at preliminary injunction stage of the case. The majority of plaintiffs' written submissions and virtually all of their attorneys' oral argument centered on the constitutionality of the Kan. Const. art. III § 5(e); i.e. the merits of the case. Less than two pages of their brief (Doc. 5) is devoted to factors 2, 3, and 4, supra. The court will give full consideration to all parties' authorities and arguments on the merits

---

[2] For the same reason, an argument might be made that a preliminary injunction will afford all the relief that plaintiffs can recover, at least insofar as the Davis vacancy is concerned.

in connection with the motion to dismiss. But at this juncture, the court's focus must be on the standards applicable to preliminary injunctions.

### 1. Likelihood of Success

Plaintiffs cite several cases in support of their position and distinguish others as not squarely addressing the issues in this case. None of the cases deal specifically with the "reality of the existing status and relationship between the parties," i.e. the selection process for Kansas appellate judges. The cases cited by plaintiffs do not show the likelihood of success on their position when considered in the context of plaintiffs' burden at this stage of the case. At most, the cases stand for the proposition that plaintiffs' Fourteenth Amendment claims have never been fully reviewed and addressed.

Defendants, on the other hand, point to cases involving "commission selection" challenges and correctly observe that none favor plaintiffs' position: <u>Miller, et al. v. Chief Justice Carpeneti</u>, 3:09-CV-00136-JWS (September 9, 2009, D. Alaska), <u>African-American Voting Rights Legal Defense Fund, Inc. v. Missouri</u>, 994 F. Supp. 1105, 1127-29 (E.D. Mo. 1997), aff'd, 133 F.3d 921 (8th Cir. 1998) (unpublished decision), and <u>Bradley v. Work</u>, 916 F. Supp. 1446, 1455-58 (S.D. Ind. 1996), aff'd, 154 F.3d 704 (7th Cir. 1998). Plaintiffs respond that these decisions simply "got it wrong." At this point, that is not enough.

Plaintiffs have failed to clearly and unequivocally demonstrate the likelihood of success on the merits of their claims.

### 2. Irreparable Harm

Plaintiffs' sole argument is that they will be excluded from participation in the selection of the next Kansas Supreme Court justice because they did not vote on the present attorney members of the commission. They point out that this violation cannot be undone once the commission submits the three nominees to the governor because at that point, the participation of the commission will be over.

Defendants respond that the sudden urgency to stop the process and declare the election of the attorney members to the commission unconstitutional is unfounded. They argue that in the context of a preliminary injunction, the assertion that plaintiffs will be irreparably harmed after the process has been in place since 1958, which was approved by vote of the general Kansas population, is a bald statement without any evidentiary support.

Once again, the court must look to the "reality of the existing status and relationships." True, plaintiffs did not get the chance to vote on the five lawyer members of the present commission. But if the court denies defendants' motion to dismiss, plaintiffs will "win" and Chief Justice Davis' successor will be selected under some different method devised by the Kansas legislature which presumably will apply to the selection of all Kansas appellate judicial officers. Indeed, one vacancy will come open in January 2011 upon the announced retirement of Court of Appeals Judge Gary Rulon. In addition, the legislature has created an additional position on the Court of

Appeals.[3]  And, of course, the Kansas legislature could enact a different selection method regardless of this court's decision. This would require that a constitutional amendment and considerable statutory changes be presented to the voters, much the same as was done when the present system was approved in 1958. Whether any new constitutional and legislative system would affect a "repair" of the present system to plaintiffs' satisfaction is not before the court at this time. The point is that plaintiffs' harm, if any, is both speculative and repairable.

Plaintiffs have not met their burden to show that they will be irreparably harmed if an injunction does not issue.

### 3. Balance of Interests and Harms

Again, plaintiffs make the sole argument that defendants will not be harmed because they have no legitimate interest in exercising their role as commissioners when it is inconsistent with the United States Constitution. Defendants respond that they will be harmed because they will be unable to move forward with their roles in the selection process, which was democratically approved in 1958.

The court disagrees with plaintiffs' position that defendants have no legitimate interest. Defendants have a legitimate interest in performing their roles as members on the commission, which has yet to be, and may never be, declared unconstitutional.

Plaintiffs have not shown their interests and injuries, if any, outweigh defendants' interests and injuries which will flow from a

---

[3] Kan. Const. art. III was enacted before the creation of the Kansas Court of Appeals but the commission procedure is equally applicable to selection of judges to serve on that court. K.S.A. 20-3004 and 3005.

preliminary injunction.

### 4. Public Interest

Plaintiffs contend that a preliminary injunction will benefit the public interest because non-attorney citizens will no longer be excluded from the selection process of the Kansas judiciary. Defendants counter that it is not in the best interest to have vacancies on the Kansas appellate courts for indefinite periods of time. Defendants further respond that "[t]he public interest lies in maintain the system created by the people of Kansas when they ratified the amendment to the Kansas Constitution[.]" (Doc. 9 at 12). Plaintiffs reply that the Kansas Supreme Court was able to function during Chief Justice Davis' absence during his prolonged illness.

At this point, in looking only at whether plaintiffs have satisfied their burden to show the need for a preliminary injunction, the court agrees that it is in the public interest to maintain the selection process that was enacted by Kansas citizens in 1958. While the court agrees that determining the constitutionality of the selection process is a public concern, it does not outweigh the public interest in preventing indefinite vacancies on the Kansas appellate courts.

Plaintiffs have not shown that a preliminary injunction will not be adverse to the public interest.

### III. CONCLUSION

Because plaintiffs have failed to meet all four factors, they are not entitled to a preliminary injunction. Likewise, they are not entitled to a TRO. Plaintiffs' motion for a TRO and preliminary injunction (Doc. 5) is denied. The court will rule on defendants'

motion to dismiss when it is fully briefed.

       IT IS SO ORDERED.

       Dated this  14th  day of September 2010, at Wichita, Kansas.

                                              s/ Monti Belot
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE