IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Robert Dool, Julie Brown, Donald D. Rosenow, and Thomas C. Schermuly, <br><br> Plaintiffs, <br><br> v. <br><br> Anne E. Burke, in her official capacity as Chairman of the Kansas Supreme Court Nominating Commission; Kerry E. McQueen, Patricia E. Riley, Matthew D. Keenan, and Jay F. Fowler, in their official capacities as Attorney Members of the Kansas Supreme Court Nominating Commission; and Carol Gilliam Green, in her official capacity as Clerk of the Kansas Supreme Court, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 10-1286-MLB-KMH ) ) ) ) ) ) ) ) ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants submit this memorandum of arguments and authorities in support of their

Motion to Dismiss.  For the reasons set forth below, the Plaintiffs' complaint fails to state a claim

upon which relief may be granted.  This Court should, therefore, dismiss the Plaintiffs' action on

the merits pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     INTRODUCTION.**

In 1956, then-Kansas Governor Fred Hall lost the Republican primary.  Faced with the

prospect of being out of a job come inauguration day, Hall avoided unemployment by

orchestrating what became known as the infamous "Kansas triple play."  The "triple play"

occurred when, prior to inauguration day, (1) Hall's friend and political ally, Chief Justice

William Smith, resigned his seat on the Kansas Supreme Court; (2) Hall resigned his position as

governor; and (3) Lieutenant Governor John McCuish appointed Hall to the Kansas Supreme Court to fill the vacancy created by Smith's resignation.  There was strong, negative public reaction to this political maneuvering, and in 1958 the voters of Kansas overwhelmingly ratified Article III, Section 5, of the Kansas Constitution to create the current process by which justices are nominated for appointment to the Kansas Supreme Court.  The Kansas Legislature—the elected representatives of the Kansas voters—then enacted a number of statutes implementing the constitutional amendment.  *See* KAN. STAT. ANN. § 20-119 *et seq*.

The Kansas judicial nomination process is a variation of what is commonly referred to as "the Missouri Plan," a process the State of Missouri implemented in the 1940s.  Numerous states have since adopted the Missouri Plan in whole or in part.  Kansas, like a number of other states, provides that some members of the judicial nominating commission are to be selected by lawyers in the state.  In Kansas, which does not have mandatory bar association membership, all lawyers licensed to practice law in Kansas may vote for the lawyer-member of the Commission selected from their particular congressional district and for the lawyer-chair of the Commission.

The essential elements of the Kansas merit-based judicial selection system are not unique.  Twenty-seven other states select at least some of their judges through the use of a nominating commission that proposes a slate of nominees from which the governor makes the appointment.  Larry C. Berkson, *Judicial Selection in the United States: A Special Report* at 2, *available at* http://www.judicialselection.us/upload/documents/
Berkson.  At least 14 other states rely on lawyers in their respective state to select lawyer-members of their nominating commissions.  And the American Judicature Society recommends that states use a system in which lawyers alone select the lawyer-members of such nominating

commissions.  American Judicature Society, *Model Judicial Selection Provisions* at 2 (rev.

2008), *available at* http://www.judicialselection.us/uploads.

Against this backdrop, the Plaintiffs in Count I of their complaint challenge the Kansas

judicial selection system on the equal protection principle of "one person, one vote" developed in

a line of Supreme Court election cases, including perhaps most famously *Reynolds v. Sims*, 377

U.S. 533 (1964) (one person, one vote principle applies in elections of state legislators).  The

Supreme Court has articulated that principle as follows: "[W]henever a state or local government

decides to select persons by popular election *to perform governmental functions*, the Equal

Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given

an equal opportunity to participate in that election."  *Hadley v. Junior College District of*

*Metropolitan Kansas City*, 397 U.S. 50, 56 (1970) (emphasis added).  However, the Supreme

Court has also explicitly stated that the one person, one vote rule does *not* apply to appointive

positions or to governmental bodies with limited powers whose work disproportionately affects a

particular group or profession.  *Ball v. James*, 451 U.S. 355, 364, 366 (1981).  Nor is the one

person, one vote rule applicable to the selection of a state legislator in all instances; a discreet

group of voters may elect a legislator in some circumstances.  *Rodriguez v. Popular Democratic*

*Party*, 457 U.S. 1, 9 (1982) (observing that the Court has rejected the argument that "the

Constitution compels a fixed method of choosing state or local officers").

Count II of the Plaintiffs' complaint vaguely alleges a violation of their "right to vote,"

without ever distinguishing the right alleged in Count II from the equal protection claim the

Plaintiffs allege in Count I.  Indeed, in Count II the Plaintiffs cite several one person, one vote

cases, which are based on equal protection principles, and conclude in paragraph 87 of the

complaint that the Commission process "violates the Equal Protection Clause."  Thus, the

Plaintiffs are actually only making a single claim, entirely based on the one person, one vote rule.

At the hearing last Friday, the Plaintiffs made clear that they are *not* challenging the composition of the Commission; their claims are in no way contesting the constitutional requirement that five of the Commission's nine members be attorneys.  Rather, the Plaintiffs challenge only the manner in which the five lawyer-members are selected—via elections in which only members of the Kansas bar vote.

If the Plaintiffs are in any way suggesting that they have a right to vote either (1) for Kansas appellate judges or (2) for the members of the Commission in general, their complaint is utterly without merit.  The Supreme Court has made it absolutely clear that there is no constitutional requirement that the states provide for the election of non-legislative officials (such as judges).   Instead, the states are completely free to decide whether such positions will be filled "by the governor, by the legislature, or by some other appointive means rather than by an election."  *Sailors v. Board of Education of the County of Kent*, 387 U.S. 105, 108 (1967); *see also Kramer v. Union Free School District No. 15*, 395 U.S. 621, 629 (1969).  Where a non-legislative position is not elected, the "principle of 'one man, one vote' ha[s] no relevancy." *Sailors*, 387 U.S. at 111; *see also Hadley*, 397 U.S. at 58.  The *Reynolds* line of cases on which the Plaintiffs rely, by contrast, "were all cases where elections had been provided and [they] cast no light on when a State must provide for the election of local officials."  *Sailors*, 387 U.S. at 108.

Importantly, *no* court has invalidated selection mechanisms for lawyer-members of nominating commissions, and three federal district courts have expressly rejected the very equal protection argument that the Plaintiffs make in this case.  *See Miller v. Carpeneti*, No. 09-136

(D. Alaska Sept. 29, 2009), *appeal pending*, No. 09-35860 (9th Cir.) (oral argument on July 29, 2010); *African-American Voting Rights Legal Defense Fund v. Missouri*, 994 F. Supp. 1105, 1128-29 (E.D. Mo. 1997), *affirmed on the merits*, 133 F.3d 921 (8th Cir. 1998) (unpublished); *Bradley v. Work*, 916 F. Supp. 1446, 1448-49, 1456 (S.D. Ind. 1996), *affirmed on other grounds*, 154 F.3d 704 (7th Cir. 1998).  On the strength of these federal cases that have considered and rejected the same equal protection claims, and for all of the reasons set forth below, the Defendants respectfully request that this Court dismiss the claims against the Defendants; the Plaintiffs' complaint fails as a matter of law to state a claim upon which relief may be granted.

## II.     THE KANSAS MERIT-BASED JUDICIAL SELECTION SYSTEM DOES NOT VIOLATE THE FOURTEENTH AMENDMENT.

### A.     Standard Under Rule 12(b)(6).

A complaint must be dismissed under Rule 12(b)(6) when it fails to allege a cognizable legal theory.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969, 1974 (2007); *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Although for purposes of this Rule 12(b)(6) motion the Plaintiffs' *fact* allegations in the complaint are taken as true, "conclusory allegations" are "insufficient to state a claim on which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Under these standards, this Court has the authority to dismiss the Plaintiffs' suit because the complaint clearly demonstrates that the Plaintiffs cannot prove they are entitled to the relief requested.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).  Dismissal under Rule 12(b)(6) is particularly appropriate when "an issue of law is dispositive" of the claims presented.  *U.S. Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1190-91 (D. Kan. 2009) (citing *Neitzke v. Williams,* 490 U.S. 319, 326 (1989)).

**B.     Because Kansas Appoints Its Appellate Justices and Judges, the One Person, One Vote Principle Does Not Apply.**

The one person, one vote cases the Plaintiffs cite are inapplicable to the Kansas process for selecting appellate judges because Kansas appellate judges are appointed, not elected. Kansas appellate judges are appointed by the governor from a list of qualified nominees presented by the Commission.  The governor of Kansas is elected by a statewide vote, but the fact that the person who makes the judicial appointments is elected does not convert judicial appointments into a popular election.  Likewise, although Kansas lawyers select some members of the Commission via elections, the election of these lawyer-members does not convert the judicial appointment process into an elective process.

Even the cases on which the Plaintiffs rely indicate that the one person, one vote principle applies only in situations where the franchise is granted to the electorate.  *See Kramer*, 395 U.S. at 629; *Phoenix v. Kolodziejski*, 399 U.S. 204, 209 (1970).  In this case, however, the people of Kansas by constitutional amendment specifically decided that the selection of members of the Commission would *not* be a franchise granted to the entire electorate.  That decision was within the constitutional discretion of the people of Kansas.  *Sailors,* 387 U.S. at 111.  Allowing a franchise limited to lawyers in selecting the lawyer-members of the Commission does not implicate the one person, one vote principle because the greater power includes the lesser in this instance:  Kansas is not constitutionally required to permit anyone to vote in connection with the appointment of supreme court justices.  Therefore, it can certainly decide to limit the selection of lawyer-members to the Commission to elections by their lawyer colleagues.

*Sailors* is particularly helpful in understanding why the one person, one vote cases have no bearing here.   The *Sailors* court considered a one person, one vote challenge to the selection of the members of a Michigan county school board in a suit brought by citizens complaining that

voters in smaller school districts had a disproportionate voice in the process.  387 U.S. at 106-07.

In *Sailors*, the voters elected the members of their local school boards in a popular election.  *Id*.

Each local school board (regardless of the population of the school district) then selected one

delegate to a kind of nominating commission, and those delegates chose the five members of the

county school board.  *Id*.  The court characterized the county school board selection system as

"basically appointive rather than elective," *id*. at 109, even though the selection process began

with the election of local school board members.  Because the process was "basically

appointive," the court held the one person, one vote challenge was without merit.  *Id*. at 111.

Like the system for choosing county school board members in *Sailors*, the merit-based

judicial selection process in Kansas is "basically appointive rather than elective."  The governor

appoints four non-lawyer-members of the Commission.  The Commission screens applicants and

recommends a list of three candidates to fill a vacancy, and the governor then appoints a justice

or judge from that list of candidates.  Because the people of Kansas purposely decided by

constitutional amendment not to fill supreme court vacancies through elections, the Plaintiffs'

authorities are simply inapplicable to the Kansas merit-based judicial selection system.

Both the United States and Kansas Constitutions recognize that there is a fundamental

difference between the selection of appointed judges and the election of legislators.

Acknowledging this distinction, a three-judge district court—in a decision summarily affirmed

by the Supreme Court of the United States—long ago held that "the concept of one-man, one-

vote apportionment does not apply to the judicial branch of the government."  *Wells v. Edwards*,

347 F. Supp. 453, 454 (M.D. La. 1972), *aff'd summarily*, 409 U.S. 1095 (1973).  The *Wells*

court's unassailable reasoning was that the one person, one vote rule, "which evolved out of

efforts to preserve a truly representative form of government, is simply not relevant to the

makeup of the judiciary," because "[j]udges do not represent people, they serve people."   *Id.* at

455.  Indeed, courts have repeatedly recognized that the one person, one vote principle does not

apply to judicial selections.  *E.g., Chisom v. Roemer*, 501 U.S. 380, 402-03 (1991); *Kuhn v.*

*Miller*, No. 98-2012, 1999 WL 1000850 at \*4 (6th Cir. Oct. 28, 1999) (unpublished decision);

*Smith v. Boyle*, 144 F.3d 1060, 1061 (7th Cir. 1998); *Field v. Michigan*, 255 F. Supp. 2d 708,

711-13 (E.D. Mich. 2003).  And yet the Plaintiffs here want the principle to be applied to a

system that *appoints* state supreme court justices?

Furthermore, a federal district court in Indiana considered a claim virtually identical to

the claim the Plaintiffs make in this case and rejected it on the merits in *Bradley v. Work*, 916 F.

Supp. 1446 (S.D. Ind. 1996).  In Lake County, Indiana, the governor appoints judges from

candidates named by a local judicial nominating commission.  The local commission consisted

of nine members, including four attorneys who were elected by the county's lawyers.  *Id.* at

1450.  As in this case, the plaintiff voters in *Bradley* contended that their equal protection rights

were violated because only lawyers could participate in the selection of the lawyer-members of

the commission.  *Id.* at 1455.  The district court rejected the claim outright.  Specifically, the

court held that the one person, one vote cases were inapplicable because the selection process for

the local commission's lawyer-members was not a general election and was "more in the

category of executive appointments, which does not implicate the Equal Protection clause."  *Id.*

at 1456.

The Plaintiffs have cited no authority that actually supports their claim that a judicial

selection process based on appointments, not elections, violates their equal protection rights.

Although Kansas is just one of a number of States which appoint judges using a process that

includes having lawyers select lawyer-members of a nominating commission, the Plaintiffs

8

cannot cite a single case invalidating such a system on equal protection grounds (or any other

grounds for that matter).

> ### C.      Even If the One Person, One Vote Principle Were to Apply, that Principle Does Not Preclude a System that Permits Lawyers to Select the Lawyer-Members of a Judicial Nominating Commission.

The Supreme Court has held several times that the one person, one vote principle does

not apply when (1) those permitted to vote for the members of an entity are disproportionately

affected by the activities of that entity, and (2) the entity exercises only narrow, limited

governmental powers.  *E.g., Ball v. James*, 451 U.S. 355, 364, 366 (1981); *Salyer Land Co. v.*

*Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 728 (1973).  The Kansas Supreme Court

Nominating Commission easily passes this two-part test.

> #### 1.  Kansas Lawyers Are Disproportionately Affected by the Activities of the Kansas Supreme Court Nominating Commission.

Certainly, all Kansans share a common interest in achieving the Kansas Constitution's

goal of having a qualified judiciary.  But the test is not whether the group being permitted to vote

for a limited purpose is the *only* group affected by the entity's activities; rather, the test is

whether the group being permitted to vote is *disproportionately* affected by the activities of the

entity compared to the general public.  *See Ball*, 451 U.S. at 371; *Salyer*, 410 U.S. at 728.  As

noted in *Bradley*, 916 F. Supp. at 1457, lawyers "as officers of the court and as potential

candidates for judicial office, are disproportionately affected by the screening process performed

by the Commission."

The Kansas Supreme Court and its justices effect the everyday lives of Kansas lawyers in

ways that do not apply to Kansas voters as a whole.  For example, the Kansas Supreme Court

establishes the rules and procedures for the admission of attorneys to the practice of law.  KAN.

STAT. ANN. §§ 7-103, 7-127; KAN. SUP. CT. R. 701-723.  The Court promulgates the Rules of

Professional Conduct to which all Kansas lawyers are held accountable.  In that regard, the Court

both regulates the practice of law by lawyers licensed in Kansas and disciplines lawyers who

violate the rules.  The Court's authority includes the possibility of suspending or disbarring

lawyers from the practice of law.  KAN. SUP. CT. R. 201-224 (attorney discipline).  The Court

also supervises the continuing legal education requirements for Kansas lawyers.  KAN. SUP. CT.

R. 801-809.  In addition, only individuals licensed to practice law may be considered by the

Commission and the governor for a position on a Kansas appellate court, so only bar members

are investigated and evaluated by the Commission.  KAN. STAT. ANN. §§ 20-105 (Supreme

Court) and 20-3002(a) (Court of Appeals).

In all of these ways the Commission and the Kansas Supreme Court directly impact

Kansas lawyers in ways far beyond the effect the entities have on Kansas citizens generally.

Thus, there is no question that Kansas lawyers are disproportionately affected by the

Commission's role in nominating, and the ultimate appointment of, Kansas Supreme Court

justices.  As stated in *Bradley*, 916 F. Supp. at 1457, lawyers' interests "*are different in nature

and in scope from the interests of the general public*."

Furthermore, Kansas lawyers also have a beneficial perspective to offer the Commission

and the state in terms of evaluating potential supreme court nominees—a perspective based on

their experience practicing law in Kansas and their personal knowledge of the credentials,

experience, integrity, and character of the candidates.  It is precisely that expertise that the people

of Kansas sought to harness when they overwhelmingly passed the constitutional amendment in

1958 that created the current merit-based selection process.  As the Kansas Legislature expressly

recognized when it enacted statutes to implement the constitutional amendment:

> It is the intent of this act that the members of the commission shall consist only of
> those persons whose purpose it will be to recommend for appointment on the

10

supreme court only lawyers or judges of recognized integrity, character, ability and judicial temperament, and whose conduct will conform to the letter and the spirit of the constitutional amendment implemented by this act.

KAN. STAT. ANN. § 20-133.  Because that constitutional amendment specifically provided for the

lawyer-members of the Commission and the means by which they are selected, it is apparent that

the role of lawyers on the Commission is critical to the goals of the people of Kansas.  KAN.

CONST. art. III, § 5(e).

### 2.   The Kansas Supreme Court Nominating Commission Exercises Only a Single, Narrow, Limited Power.

The Kansas Supreme Court Nominating Commission has one and only one function:  to

screen applicants for vacancies on the Kansas appellate courts in order to send to the governor a

list of three qualified candidates for each position that becomes vacant.  This single, limited

purpose removes the Commission from the one person, one vote principle announced by

*Reynolds* and its progeny, as that principle only applies to "units of local government having

*general governmental powers* over the entire geographic area served by the body."  *Avery v.*

*Midland County*, 390 U.S. 474, 485 (1968) (emphasis added).

A review of Supreme Court and Tenth Circuit cases illustrates that the Commission does

not exercise "general" power within the meaning of the case law.  In *Avery*, the Court found that

the county commission challenged in that case did exercise "general government powers," noting

that the county commission

> is the general governing body of the county.  It establishes a courthouse and jail, appoints numerous minor officials such as the county health officer, fills vacancies in the county offices, lets contracts in the name of the county, builds roads and bridges, administers the county's public welfare services, performs numerous duties in regard to elections, sets the county tax rate, issues bonds, adopts the county budget, and serves as a board of equalization for tax assessments.

390 U.S. at 476.  To the same effect, the Tenth Circuit found in *Hellebust v. Brownback*, 42 F.3d 1331, 1332-34 (10th Cir. 1994), that the Kansas Board of Agriculture exercised "general government powers" because the Board (1) had approximately 330 employees; (2) had an annual budget of $15 million allocated from the general fund; and (3) enforced approximately 80 laws that affected everyday lives of Kansas citizens.

In contrast, the Supreme Court in *Ball* found that the water district did not perform a "general government function" as required by *Reynolds* and *Avery* because that water district could not and did not:

- "impose ad valorem property taxes or sales taxes";

- "enact any laws governing the conduct of citizens"; or

- "administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services."

*Ball*, 451 U.S. at 366.  The Tenth Circuit similarly rejected an equal protection challenge to the Board of Governors of the Registered Dentists of Oklahoma because the Board "'functions as a special purpose unit of government'" and thus is "not subject to the one person, one vote rule." *Plowman v. Massad*, 61 F.3d 796, 798 (10th Cir. 1995).

The federal district court's discussion in *Bradley*, rejecting the same equal protection challenge to the Indiana judicial nominating commission, is also relevant here:

> The Commission is responsible for selecting from among eligible applicants for a judicial appointment the three most highly qualified candidates.  This is a narrow and limited purpose and function.  In fact, the attorney members of the Commission are elected to a special group that serves no traditional governmental functions at all.  The Commission's sole purpose and reason for existence is to screen candidates as part of the judicial appointment process. *Consequently, the Commission satisfies the "special unit with narrow functions" prong of the exception to the one-man, one-vote rule*.

*Bradley*, 916 F. Supp. at 1456-57 (emphasis added).

The Kansas Supreme Court Nominating Commission has no power to impose sales or property taxes, enact laws or regulations affecting all citizens, or exercise police powers over traditional public health, safety, or welfare matters.  *See Ball*, 451 U.S. at 366; *Bradley*, 916 F. Supp. at 1456-57.  The Commission has no authority to make any law whatsoever; it has no employees; it does not even have a budget to administer.  It is difficult to imagine another government commission or entity with such a "limited purpose" or "special" function.  The *only* responsibility of the Commission is to screen potential judicial candidates and provide three nominees to the governor *if and when* there is an appellate vacancy in Kansas.  For most months of most years, the Commission performs no function at all and does not even convene.  Therefore, the Commission epitomizes the special-purpose entity with limited powers, and it is not subject to the requirements of the one person, one vote rule.

### 3.   Having the Lawyer-Members of the Commission Selected by Lawyers Is Rationally Related to a Legitimate State Interest.

Because the Commission is a limited purpose/special function entity, the decision by the people of Kansas to have licensed members of the bar select the five lawyer-members of the Commission must only satisfy rational basis review in order to survive equal protection scrutiny. *Ball*, 451 U.S. at 371.  This, it easily does.

Permitting Kansas lawyers to select the lawyer-members of the Commission is rationally related to the legitimate state interests of avoiding politicization of the judicial selection process and ensuring that those appointed to the bench are experienced lawyers with strong credentials and recognized integrity.  Lawyers are uniquely qualified to evaluate the legal skills and experiences of their colleagues in the bar.  Likewise, because all judicial applicants must be licensed to practice law in Kansas, skill and experience in the practice of law play a vital role in determining a judicial candidate's qualifications.  Thus, it was reasonable for the people of

Kansas to conclude when they adopted the current selection system that Kansas lawyers—by virtue of their legal knowledge and experience—have insight as to who may be the most qualified to serve as a Kansas Supreme Court justice.  As stated in *African-American Voting Rights Legal Defense Fund*, 994 F. Supp. at 1128:

> Certainly, it is reasonable, if not necessary, to have lawyers on these commissions. There is no one better to evaluate the ability of potential judges than the attorneys who will have to practice before them every day.  Attorneys typically will know the judicial aspirants better than the general public. They will know which aspirants have the legal acumen, the intelligence, and the temperament to best serve the people of Missouri.

That said, the Plaintiffs' tunnel-vision focus on the role that lawyers play in selecting some members of the Commission should not obscure the fact that non-lawyers also have an important and substantial role on the Commission.  *See Miller*, slip op. at 22; *African-American Voting Rights Legal Defense Fund*, 994 F. Supp. at 1129 n.51; *Bradley*, 916 F. Supp. at 1458.  In Kansas four non-lawyers sit on the Commission, and they are appointed by the popularly-elected governor.  The Plaintiffs make no claim (nor could they) that any Commission vote on a candidate has ever split along lawyer versus non-lawyer lines.  *See* Patricia E. Riley, *Merit Selection:  The Workings of the Kansas Supreme Court Nominating Commission*, 17 KAN. J.L. & PUB. POL'Y 429, 435 (2008) (stating that "[s]upport for applicants has never broken down along lawyer/non-lawyer lines").  Thus, the method of selection of the lawyer-members of the Commission is rationally related to a legitimate state interest and, combined with the appointment of non-lawyer-members, is meeting that objective.  As a result, the Plaintiffs' claim that the judicial selection system that the people of Kansas created in 1958 violates the Equal Protection Clause fails as a matter of law.

14

**D.**     **Courts that Have Considered the Plaintiffs' One Person, One Vote Claim Have Rejected the Claim as a Matter of Law.**

Three federal district courts already have addressed the Plaintiffs' one person, one vote argument, and all have come to the same conclusion:  state judicial nominating commissions are limited-purpose entities that fall outside the scope of the one person, one vote principle.

**1.  The Alaska Case.**

Most recently, the Plaintiffs' Indiana counsel had essentially the same equal protection argument rejected by the federal district court in Alaska in *Miller v. Carpeneti*, No. 09-136 (D. Alaska Sept. 29, 2009).  In Alaska, members of the bar elect a state board that governs the bar. That board in turn appoints several lawyer-members to the Alaska Judicial Council, which screens potential Alaska Supreme Court candidates and provides the names of three nominees to the Alaska governor.  As here, the plaintiffs complained that because only lawyers ultimately had a vote that could affect the choice of the lawyer-members of the nominating commission (in that case only indirectly), the Alaska system violated the one person, one vote principle.

The Alaska District Court disagreed, concluding that the Alaska Judicial Council was a limited purpose entity not subject to the one person, one vote principle:

> Here, the Council does not "administer normal functions of government" or "enact laws governing the conduct of citizens"; rather, among its responsibilities, the Council is charged with evaluating and recommending the most qualified candidates for Alaska's bench based on its assessment of the credentials of members of the bar being considered for vacant judgeships.  In this regard, therefore, the Council is a limited purpose entity whose actions disproportionately affect the membership of the Alaska bar.

*Miller*, slip op. at 21-22.

The court then upheld the Alaska system under rational basis review, observing that "the selection of the Council's attorney members by the Board is rationally related to a legitimate state interest in selecting well-qualified jurists."  *Id.* at 22.  Importantly, the court noted that "the

Alaska Constitution has included checks on the exercise of the appointment powers in the Plan,

which save it from defeat under rational basis review."  *Id.*

Three of those "checks" apply with full force to the Kansas merit-selection system:

- "some members of the Board are themselves appointed by the Governor";

- "the Council's nominations are subject to a final selection by the Governor"; and

- "every person nominated by the Council and selected by the Governor must stand for periodic retention elections in which all registered voters participate."

*Id.*  Relying on these important "checks," the district court upheld the Alaska merit-selection

system and dismissed the plaintiffs' complaint, concluding as follows:

These extensive limitations winnow and ultimately defeat the notion central to Plaintiffs' case that it is a select group of citizens—that is, Alaska lawyers—who actually select the Alaska judiciary and in doing so deprive other citizens of equal rights under the law.  Rather, the Plan merely allows the public to draw upon the expertise of Alaska's lawyers in the selection of judicial officers, a justification that is rationally related to a legitimate state interest.

*Id.*

### 2.  The Missouri Case.

In *African-American Voting Rights Legal Defense Fund, Inc. v. State of Missouri*, 994 F.

Supp. 1105 (E.D. Mo. 1997), the plaintiffs challenged the constitutionality of Missouri's judicial

selection process (the "Missouri Plan" on which the Kansas merit-selection system is modeled).

In Missouri, as in Kansas, the governor makes judicial appointments from a list of nominees

presented by a nominating commission.  In Missouri, the nominating commission is composed of

lay citizens, lawyers, and judges.  *Id.* at 1112.  The lawyer-members of the commission are

selected via an election in which only licensed lawyers may vote.  *Id.* at 1117.

In rejecting the plaintiffs' equal protection claim, the district court pointed out that the persons who may not vote for the lawyer-members of the commission—non-lawyers—are not a "suspect class" for purposes of equal protection analysis.  *Id.* at 1127.  The court then held:

> Missouri's practice of permitting lawyers to elect the lawyers on the nominating commission does not interfere with the exercise of a fundamental right because there is no fundamental right of every citizen to vote in every election which happens to take place in Missouri.

*Id.*  The court specifically rejected the case law on which the Plaintiffs here rely, holding that those cases are inapplicable because the nominating commission is "a special unit with narrow functions" and thus fits within the "limited purpose" exception to the one person, one vote rule.  *Id.* at 1128 n.49.  Thus, the district court concluded that

> because the practice of lawyers electing lawyers does not operate to the peculiar detriment of any suspect class, and it does not trammel upon a fundamental right, the only issue remaining is whether there is a rational basis for the practice in question.

*Id.* at 1128.  In other words, the proper equal protection scrutiny was rational basis review.

Applying this proper standard of rational basis review, the court had no trouble upholding the Missouri merit-selection system.  As noted above, the court held that:

- "it is reasonable, if not necessary, to have lawyers" on a judicial nominating commission;

- "There is no one better to evaluate the ability of potential judges than the attorneys who will have to practice before them every day";

- "Attorneys typically will know the judicial aspirants better than the general public"; and

- Attorneys "know which aspirants have the legal acumen, the intelligence, and the temperament to best serve the people" as a justice or judge.

*Id.*  Importantly, the district court specifically upheld the process by which lawyers were elected to the nominating commission, not just the participation of lawyers on the commission.  *Id.* at

17

1129.  The Eight Circuit affirmed the district court's decision on the merits without further

discussion, emphasizing that "the decision of the District Court is correct and that extended

discussion would add nothing of substance to the thorough and well-reasoned opinion of that

court."  *African-American Voting Rights Legal Defense Fund, Inc. v. State of Missouri*, 133 F.3d

921 (8th Cir. 1998) (unpublished).

### 3.   The Indiana Case.

In *Bradley v. Work*, 916 F. Supp. 1446 (S.D. Ind. 1996), the district court held that a local

judicial nominating commission—which included lawyer-members elected only by members of

the bar in that county—was a "limited purpose" entity not subject to the one person, one vote

principle.  The court observed that the local nominating commission "serves no traditional

governmental functions at all."  *Id.* at 1456.  Consequently, "the Commission satisfies the 'special

unit with narrow functions' prong of the exception to the one-man, one-vote rule."  *Id.* (quoting

*Ball v. James*, 451 U.S. 355, 361-62 (1981)).  Thus, as in *African-American Voting Rights Legal*

*Defense Fund*, the court applied rational basis scrutiny, pointing out:

> The attorney-members of the Commission are selected to represent the interests
> and reflect the expertise of the local bar when evaluating candidates for a judicial
> appointment.  Their divergent interests uniquely qualify attorneys to advise the
> governor, for their interests are different in nature and scope from the interests of
> the general public in a fair and impartial judiciary.

*Id.* at 1457.

The court easily concluded that the Indiana system passed constitutional muster because

"the State's classification represents a reasonable effort to provide representation of both the

general populace and the members of the bar on a Commission whose limited function is to

advise the governor on the selection of an appropriate candidate for judicial office."  *Id.* at 1458.

18

The Seventh Circuit affirmed, but did not address the plaintiffs' equal protection argument which had not been preserved on appeal. *Bradley v. Work*, 154 F.3d 704, 711 (7th Cir. 1998).

## III.     CONCLUSION.

It is not a mere coincidence that all courts that previously have decided this question have rejected that the Plaintiffs' equal protection argument as a matter of law.  In each of the cases the courts determined that judicial nominating commissions are limited-purpose entities that are not subject to the one person, one vote principle, and that the decision to have lawyers select the lawyer-members of a commission is rationally related to the legitimate state interest of having a qualified judiciary.  This case requires the same conclusions.  Here, as in those previous cases, the Plaintiffs have not stated a claim upon which relief can be granted.  The Court should dismiss the claims, and grant judgment for the Defendants.


THOMPSON RAMSDELL & QUALSETH, P.A.
s/Stephen R. McAllister

| | |
|---|---|
| Stephen R. McAllister | #15845 |
| Todd N. Thompson | #11194 |

333 W. 9th Street
P.O. Box 1264
Lawrence, KS  66044
Phone: (785) 841-4554
Fax: (785) 841-4499
stevermac@fastmail.fm
todd.thompson@trqlaw.com
Attorneys for Defendants


OFFICE OF ATTORNEY GENERAL STEVE SIX
Patrick J. Hurley                    #17638
Deputy Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Street
Topeka, KS 66612
Phone:  (785) 296-2215
Fax:  (785) 296-6296
patrick.hurley@ksag.org
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2010, I electronically filed the foregoing with the

Clerk of the Court via the Court's Electronic Filing System, and service was accomplished

through the Notice of Electronic Filing on the following Filing Users:

James Bopp, Jr.                                       Richard A. Macias
Joseph A. Vanderhulst                                 901 North Broadway
Josiah S. Neeley                                      Wichita, KS 67214-3531
Bopp, Coleson & Bostrom                               Attorney for Plaintiffs.
1 South Sixth Street
Terre Haute, IN 47807-3510
Attorney for Plaintiffs


THOMPSON RAMSDELL & QUALSETH, P.A.

s/ Todd N. Thompson
Stephen R. McAllister            #15845
Todd N. Thompson                 #11194
333 W. 9th Street
P.O. Box 1264
Lawrence, KS  66044
Phone: (785) 841-4554
Fax: (785) 841-4499
todd.thompson@trqlaw.com
Attorneys for Defendants