**United States District Court**
**District of Kansas**

| | |
|---|---|
| **Robert Dool**, **Julie Brown**, **Donald D. Rosenow**, and **Thomas C. Schermuly**, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> **Anne E. Burke**, in her official capacity as Chairman of the Kansas Supreme Court Nominating Commission; **Kerry E. McQueen**, **Patricia E. Riley**, **Matthew D. Keenan**, and **Jay F. Fowler**, in their official capacities as Attorney Members of the Kansas Supreme Court Nominating Commission; **Carol Gilliam Green**, in her official capacity as Clerk of the Kansas Supreme Court, <br><br> *Defendants*. | **Case No.** 6:10-cv-01286-MLB-KMH |

**Plaintiffs' Memorandum in Support of Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Robert Dool, Julie Brown,

Donald D. Rosenow, and Thomas C. Schermuly have moved for summary judgment on all

counts contained in their complaint. In support of that motion, Plaintiffs offer this memorandum

of law.

**Statement of the Nature of the Matter**

This case presents a challenge to the provisions of Kansas's constitution and statutes that

establish its system for the selection of the state judiciary. Kan. Const. art. III, § 5(e); Kan. Stat.

§§ 20-119 to -123. In their verified complaint, Plaintiffs pray that the Court declare parts of these

provisions facially unconstitutional and enjoin their enforcement, because they violate the Equal

**Plaintiffs' Summary Judgment Memo**      1

Protection Clause of the Fourteenth Amendment of the United States by denying Kansas citizens their right to vote and to participate in the selection of public officials. In the alternative, Plaintiffs pray that the Court declare the above provisions unconstitutional as applied to them.

Under the current system, the Kansas Supreme Court Nominating Commission ("Commission" or "Nominating Commission") selects Kansas supreme court justices. Thus, the officials on the Commission perform the traditional government function of making binding nominations for judicial vacancies. But only attorneys in Kansas get to vote for five of the nine members of the Commission. As a result, Plaintiffs are denied the franchise in the elections for the Commission members and their participation in the selection of state judges is much inferior to that of attorneys.

Plaintiffs only challenge that they are excluded from the election of the attorney members of the Commission. This exclusive voter qualification violates Plaintiffs' right to vote. The fact that a certain number of commission members must be attorneys and a certain number must be non-attorneys does not violate equal protection and is not at issue. But when a state discriminates among voters in determining who may participate in an election, the state must show that the discrimination is necessary to achieve a compelling interest.

The Court has denied Plaintiffs' request for preliminary injunctive relief. (Doc. 18). But the proximate threat of violation of Plaintiffs' Equal Protection rights in the selection of the succeeding justice for the current Kansas Supreme Court vacancy remains. A vacancy has recently been announced on the Kansas court of appeals as well. Plaintiffs, therefore, move this Court to enjoin Defendants Burke, McQueen, Riley, Keenan, and Fowler from participating in the process of selecting and voting for nominees under Kansas Const. art. III, § 5(a), (d) and

**Plaintiffs' Summary Judgment Memo**       2

Kansas Stat. § 20-132, for the vacancy created by the retirement and death of Chief Justice Robert E. Davis and all future vacancies on the Kansas supreme court and court of appeals. The Commission is supposed to submit nominations to the Governor no later than October 3, 1010. Kan. Stat. § 20-132 ("[T]he commission shall make its nominations for each vacancy and certify them to the governor as promptly as possible, and in any event not later than sixty (60) days from the time such vacancy occurs.").

Plaintiffs move that Kan. Const. art. III, § 5(e) and Kan. Stat. §§ 20-119 to -123 be declared unconstitutional facially and as-applied. As a result, Plaintiffs also move that the Court permanently enjoin Defendants Burke, McQueen, Riley, Keenan, and Fowler from exercising any power or authority as members of the Nominating Commission. To "insure that no further elections are conducted under the invalid plan," Plaintiffs further move that Defendant Green be permanently enjoined from performing any actions under Kan. Stat. §§ 20-119 to -123 and administering any future elections of the chairman or attorney members of the Nominating Commission.

Upon further examination of the relevant constitutional and statutory sections, Defendants are incorrect that this remedy will halt any nomination process or render the Commission inoperable. The makeup of the Commission would remain the same, the five attorney positions would simply be vacant until a constitutional system for their selection is established by the legislature. The law contains no requirement that the Commission must have no vacancies in order to function. In fact, the statute establishes that the Commission can only act at a meeting, and that the action of four members is sufficient to call a meeting. Kan. Stat. § 20-123 ("Such a meeting shall be held . . . upon the call of any four members of the commission.").

**Plaintiffs' Summary Judgment Memo**       3

Therefore, there is no reason why the Commission cannot continue to function if the attorney members are immediately enjoined and their positions considered vacated.

In the alternative, Plaintiffs move for declaratory relief similar to what was granted in *Hellebust v. Brownback*, 42 F.3d 1331, 1335-36 (10th Cir. 1994). Plaintiffs move that the Court declare the terms of the Defendant members of the Board to be expired immediately and appoint the Governor receiver of the Board. The vacant positions can then be filled by the Governor until the Kansas Legislature can devise a new system for selecting the attorney members of the Commission that comports with the commands of the Equal Protection Clause. Under this remedy, there is no concern that the Commission cannot continue to perform its function, because it will have a full complement of members.

Using either remedy, Plaintiffs respectfully request that the Court retain jurisdiction over to ensure that any new selection process comport with the commands of Equal Protection.

### Statement of the Facts

Plaintiffs are qualified Kansas voters, residing in counties across the state. They are excluded from participating in the elections of the attorney members of the Kansas Supreme Court Nominating Commission because they are not members of the Kansas bar.

The Commission is empowered to select the nominees for vacancies on the Kansas Supreme Court and Court of Appeals. Kan. Const. art. III, § 5(a); Kan. Stat. §§ 20-132, 30-3004. The Commission has nine members. Kan. Const. art. III, § 5(e). The chairman of the Commission is elected every four years. Only members of the Kansas bar residing in the State are allowed to vote in this election. Kan. Stat. § 20-119. Four members must be attorneys, and are elected to staggered four year terms, one from each congressional district. Only members of the

**Plaintiffs' Summary Judgment Memo**       4

Kansas bar residing in the relevant district are allowed to vote in these elections. Kan. Stat. § 20-120. The Clerk of the Kansas Supreme Court administers the elections of the attorney members of the Commission. Kan. Stat. §§ 20-119, -120. The remaining four must be non-attorneys and are appointed by the Governor to staggered four year terms, one from each congressional district. Kan. Const. art. III, § 5(e).

Chief Justice Robert E. Davis retired from the Kansas Supreme Court on August 3, 2010, and passed away on August 4, 2010. The Commission has begun the process of selecting nominees to fill the vacancy created by Chief Justice Davis's passing. Applications were accepted until September 1, 2010. Kansas Appellate Clerk, Nominating Commission, *available at* http://www.kscourts.org/Appellate-Clerk/Nominating-Commission/Supreme-Court-Vacancy-09012010.pdf. By law, the Commission must review these applications and submit the names of three nominees to the Governor no later than sixty days from the creation of the vacancy. Kan. Stat. § 20-132. This means the Commission must submit nominees no later than October 3, 2010.

One of the three nominees selected by the Commission will invariably become a justice or judge on the Supreme Court or Court of Appeals because the Governor must fill the vacancy by choosing one of the nominees. The nominations from the Commission cannot be rejected by the Governor or the legislature. The appointment of a nominee to fill the vacancy is not subject to confirmation by the legislature. Upon receiving the nominations, the Governor has sixty days to make a selection to fill the vacancy. Kan. Const. art. III, § 5(b). If the Governor fails to make an appointment within sixty days, the Chief Justice of the Kansas Supreme Court will do so. *Id.*

**Plaintiffs' Summary Judgment Memo**        5

**Questions Presented**

1.     Whether the nomination of justices to the Kansas Supreme Court by the Kansas

Supreme Court Nominating Commission violates the Equal Protection Clause

because Plaintiffs are excluded from the elections of the attorney members of the

Commission, and therefore have unequal participation in the selection of the

judiciary based upon occupation.

2.     Whether the elections of the attorney members of the Kansas Supreme Court

Nominating Commission violates the Equal Protection Clause because Plaintiffs

are excluded from participating in these elections.

**Argument**

The voter qualification placed upon the election of the attorney members of the Kansas

Supreme Court Nominating Commission violates Plaintiffs' right to equal protection under the

law. The Tenth Circuit has considered an analogous situation in *Hellebust*, 42 F.3d 1331, and this

case should have the same result. The current selection system violates the principles of *Kramer*

and the system does not satisfy the strict requirements of the exception to those principles. *See*

*Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621 (1969). Furthermore, none of the

exceptions to the geographic "reapportionment doctrine" of the *Reynolds* line of cases are

relevant here, because this case is not about inequality arising from malapportionment of voting

districts. *Bd. of Estimate v. Morris*, 489 U.S. 688, 691-93 (1989) (tracing the development of the

"reapportionment doctrine" from the *Reynolds* line of cases as distinct from the voter

qualifications doctrine from the *Kramer* line). The sole issue in this case is whether the

requirements of Kan. Stat. §§ 20-119, -120, which prohibit some Kansas residents who are

**Plaintiffs' Summary Judgment Memo**        6

otherwise qualified by age and citizenship from participating in Nominating Commission elections, violate the Fourteenth Amendment. *Kramer*, 395 U.S. at 625-26. The Equal Protection Clause is implicated "because some resident citizens are permitted to participate and some are not." *Id.* at 629.

## I.     The Election of the Attorney Members of the Commission Is Unconstitutional According to *Hellebust*.

This case is closely analogous to *Hellebust v. Brownback*, 42 F.3d 1331 (10th Cir. 1994). In *Hellebust*, the Tenth Circuit applied the Supreme Court's equal protection cases to a situation where Kansas had restricted the selection of the Board of Agriculture to delegates from agricultural organizations. *Id.* at 1332-33. The plaintiffs in *Hellebust* alleged that the selection scheme violated the Equal Protection Clause because the Board "exercised broad authority affecting arguably all Kansas and is not limited solely to agriculture or agribusiness interests." *Id.* at 1332. The State had argued that the laws administered by the Board all related to agriculture, so that it was appropriate to limit the election of the members of the Board to the groups primarily affected by those laws. *Id.* at 1334.

The Tenth Circuit struck down the arrangement. The court started with the principles of *Kramer*, which apply to classifications limiting eligibility among registered voters." *Hill v. Stone*, 421 U.S. 289, 297-98 (1975). According to those principles, "in an election of general interest, restrictions on the franchise other than residence, age, and citizenship must promote a compelling state interest in order to survive constitutional attack." *Hellebust*, 42 F.3d at 1333 (quoting *Hill*, 421 U.S. at 295). The court then found that the election scheme did not qualify for the narrow exception to those principles allowing an election to be limited other than by age, residence, or

**Plaintiffs' Summary Judgment Memo**          7

citizenship. *Id.* at 1333-34. The court found that, even though most of the Board's powers might affect only agricultural organizations, "once the line is crossed into the governmental powers arena," the election must be open to all otherwise qualified citizens. *Id.*

Here, the State has limited the election of some of the members of the Nominating Commission exclusively to attorneys. This restriction is unconstitutional unless Kansas can show that it is necessary to acheive a compelling state interest or that the election meets the narrow exception to this rule. *Kramer*, 395 U.S. at 626; *Hill*, 421 U.S. at 297-98; *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 726-30 (1973); *Ball v. James*, 451 U.S. 355, 365 n.8 (1981). But as in *Hellebust*, the State cannot show that the Nominating Commission qualifies for the narrow exception. The Commission has the power to nominate state justices and judges, which is a normal function of government. And this function does not disproportionately affect attorneys alone.

*Hellebust* did not turn on how many and diverse were the powers exercised by the Board of Agriculture. Rather, the court focused on whether its powers materially affected all Kansans. When an entity exercises many different functions, even if most are of limited effect, "once the line is crossed into the governmental powers arena" and "once a state agency has the authority to affect every resident" the election does not qualify as one of limited purpose. *Hellebust*, 42 F.3d at 1334-35. The court in *Hellebust* was explicit that one function affecting all citizens was enough to remove the election from the *Salyer/Ball* exception. *Id.*; *Ball*, 451 U.S. at 368 ("[T]he provision of electricity is not *a* traditional *element* of governmental sovereignty and so *is not in itself* the sort of general or important governmental *function* that would [implicate the commands of Equal Protection].") (emphasis added).

**Plaintiffs' Summary Judgment Memo**          8

Therefore, it is irrelevant that the Nominating Commission exercises a single function: the nomination of judges. The focus is the effect of this function. *Id.* at 1334. The nomination of judges is a "traditional element of governmental sovereignty," *Ball*, 451 U.S. at 368, as evidenced by the fact that it originates in the state constitution, as it does in the Federal Constitution and in every state constitution in this country. And this function affects all Kansans. It is not necessary that this function affect all Kansans equally to require the election to be open to all. Rather, it is enough that all are affected in a substantial and material way. *See City of Phoenix v. Kolodziejski*, 399 U.S. 204, 207-09 (1970). The government has not shown, and cannot show, how the power to nominate the highest officials of a branch of government, taken alone, does not substantially affect all citizens or affects any one occupation disproportionately.

Because the Commission's function is to nominate judges, it is necessary to look to the functions of judges in order to determine the effect of the nominating function. Even Defendants acknowledge this when they argued at the preliminary injunction hearing that the power exercised by the judiciary, rather than the Commission itself, disproportionately affects attorneys, such as through the regulation of the legal profession. Obviously, if the Commission's function was to nominate the members of a water district or professional association, the election of the Commission would satisfy the limited purpose exception. But there is no support for the notion that *Hellebust* would have upheld a scheme in which a commission was elected by agricultural groups and then this commission appointed the Board of Agriculture. The ultimate question is, therefore, whether justices and judges satisfy the limited purpose exception and could be elected exclusively by attorneys.

Accordingly, the Court should look to the functions exercised by the state judiciary and compare them with the functions of the Board of Agriculture in *Hellebust*. The State has not shown, and cannot show, that judges exercise "nominally public" functions that are "so far removed from normal governmental activities and so disproportionately affect" attorneys that attorneys are disporportionately affected by judicial functions, *Avery*, 390 U.S. at 56, and everyone else is substantially less affected, *Kramer*, 395 U.S. at 632. The Kansas judiciary, like the Board of Agriculture in *Hellebust*, "has the authority to affect every resident in matters arising in their daily lives." *Hellebust*, 42 F.3d at 1335; *see Republican Party of Minnesota v. White*, 536 U.S. 765, 784 (2002). Therefore, following *Hellebust*, the election of the Nominating Commission does not satisfy the limited purpose exception and the occupational restriction is unconstitutional.

## II.    The Election of the Attorney Members of the Commission Denies Plaintiffs' Equal Protection Rights.

### A.    The Election of the Attorney Members of the Commission Is Inconsistent with the Principles of *Kramer*.

#### 1.    The Equal Protection Clause Applies to the Selection System at Issue.

The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Therefore, a state government may not make arbitrary and invidious distinctions among its citizens. *Avery v. Midland County*, 390 U.S. 474, 484 (1968). This is especially true with respect to the fundamental right to vote. *See, e.g., Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Accordingly, the Equal Protection Clause guarantees qualified citizens the "right to vote in elections without having [their] vote wrongfully

**Plaintiffs' Summary Judgment Memo**        10

denied, debased or diluted." *Hadley v. Junior College Dist. of Metro. Kansas City*, 397 U.S. 50, 52 (1970).

There are many ways in which a state can infringe upon the right to participate in the selection of public officials. Discrimination among citizens can arise, for example, from geographic apportionment of voting districts, *e.g. Morris*, 489 U.S. at 691-92 (tracing the development of the "reapportionment doctrine" from the *Reynolds* line of cases), gerrymandering of districts, *e.g. Shaw v Reno*, 509 U.S. 630 (1993), or from voter qualifications, *e.g. Mo. Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 808 (8th Cir. 2007) (tracing the law on "voter eligibility requirements" and listing the controlling cases). Accordingly, the Supreme Court has developed several applications of the Equal Protection Clause to address these various sources of unequal treatment.

Here, the State of Kansas has set up elections for some of the members of the Supreme Court Nominating Commission and restricted the franchise exclusively to attorneys. Therefore, the *Kramer* line of cases treating the constitutionality of "voter qualifications" is controlling. *See Carrington v Rash*, 380 U.S. 89, 98 (Harlan, J., dissenting); *Hill*, 421 U.S. at 297-98. In these cases, the Supreme Court developed the principle that "any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a compelling state interest." *Hellebust*, 42 F.3d at 1333 (quoting *Hill*, 421 U.S. at 297). Applying this principle, nearly all voter qualifications other than age, residency, or citizenship have been found unconstitutional. *See, e.g.*, *Carnahan*, 499 F.3d at 808 (listing cases).

**Plaintiffs' Summary Judgment Memo**      11

### 2.   The Court Must First Determine Whether the Election Is of General or Limited Interest.

When presented with an election in which "some resident citizens are permitted to participate and some are not," a court must apply strict scrutiny under the Equal Protection Clause to determine whether the discrimination among voters is justified. *Kramer*, 395 U.S. at 629. The first step in this analysis is to determine whether the outcome of the election is of general or limited interest and effect. *Kramer*, 395 U.S. at 632-33; *Cipriano v. City of Houma*, 395 U.S. 701, 704-06 (1969); *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 207-12 (1970); *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 726-30 (1973); *Hill*, 421 U.S. at 296-97.

This step will determine the level of scrutiny applied to the actual voter qualifications at issue. If the election is found to be one of general interest and affect, the qualifications must be necessary to promote a compelling state interest. *Kramer*, 395 U.S. at 627; *Cipriano*, 395 U.S. at 704; *Kolodziejski*, 399 U.S. at 213; *Hill*, 421 U.S. at 297. If the election is found to be of limited interest, the qualifications must be reasonably related to the limited nature of the outcome of the election. *Salyer*, 410 U.S. at 730-31; *Ball v. James*, 451 U.S. 355, 365 n.8 (1981).

The determination of whether the election is of general or limited interest focuses on the extent of the interest and effect of the "outcome of the election" on the electorate. *Hill*, 421 U.S. at 296; *Kramer*, 395 U.S. at 632; *Cipriano*, 395 U.S. at 706; *Kolodziejski*, 399 U.S. at 209. The court asks whether all resident voters are "substantially affected and directly interested in" the outcome of the election, in this case, the selection of five of the nine members of the Nominating Commission. *Cipriano*, 395 U.S. at 706. If "all citizens are affected in important ways by" and

**Plaintiffs' Summary Judgment Memo**      12

"have a substantial interest in" the outcome of the election in question, then "the Constitution does not permit . . . the exclusion of otherwise qualified citizens from the franchise." *Kolodziejski*, 399 U.S. at 209.

The court does not merely look at the interest and effect with respect to the group included in the franchise. Indeed, in the first step the focus is not on the supposed special interests of the included voters, but on those excluded. In the *Kramer* line of cases, the Court's focus was on "whether all those excluded [were] in fact substantially less interested or affected than those [included]." *Kramer*, 395 U.S. at 632; *see also Hellebust*, 42 F.3d at 1334. Here, the court must focus on whether all Kansans are substantially interested in and affected in material ways by the Nominating Commission.

An essential component for finding that a specific group is disproportionately interested in an election is a finding that all otherwise qualified voters do not have a substantial interest. *Id.* at 1335 ("Once a state agency has the authority to affect every resident . . . its powers are not disproportionate to those who vote for its officials."). The government has the burden of proving that all non-attorneys in Kansas are "in fact substantially less interested or affected than" attorneys in the outcome of the Commission elections. *Hill*, 421 U.S. at 296.

The Court in *Salyer* carefully observed that the case before it was unlike any earlier cases in this first step. *Salyer*, 410 U.S. at 726-27. Unlike in *Kramer*, the water district election did not "exclude[] many persons who had distinct and direct interests." *Id.* at 726. Unlike in *Cipriano*, the water district election did not "affect virtually every resident." *Id.* at 727. And unlike in *Kolodziejski*, those excluded from voting did not "have a great interest" in the outcome of the election. *Id.* When the subject of the election is an official or entity, the election is of general

interest if the official "perform[s] important governmental functions [that are] general enough and have sufficient impact throughout the district." *Hadley*, 397 U.S. at 53-54.

Rational basis scrutiny is applied only if the first step determines that the election is of limited interest. It is only rational for the government to limit the franchise *to those disproportionately interested and affected* when all others are not materially interested or affected. *Salyer*, 410 U.S. at 731; *Ball*, 451 U.S. at 371. If the exception is met, and the situation is one in which the government is constitutionally permitted to hold a limited election, the only question that remains is whether it has limited the franchise to those interested. *Salyer*, 410 U.S. at 730-31. Here, the election is of general interest.

### 3. Strict Scrutiny Applies Whether the Office Is Ultimately Filled by Appointment or Election.

Under the United States Constitution, state and federal offices are legitimately filled by means of elections or through appointments. *Kramer*, 395 U.S. at 629. The fact that an official might ultimately be appointed does not mean that the elections of the appointing officials are free from the restraints of Equal Protection. While the appointment of officials may cause the influence of each voter to be *indirect*, appointments respect Equal Protection so long as the official making the appointment is "elected consistent with the commands of the Equal Protection Clause," thereby ensuring that each voter's influence is *equal* to that of other citizens. *Id.* at 627 n.7. Ultimately, each citizen must be given an equal voice in the selection of the officials who govern them, no matter how indirect that voice might be.

Otherwise, a state could simply create inequality among voters by having officials appointed rather than elected. *Kramer* expressly addressed this issue. The fact that an official

**Plaintiffs' Summary Judgment Memo**      14

does not have to be elected at all does not free the state to place any rational voter qualifications on an election or have the official appointed by any rational related person or entity. *Id.* at 629; *Sailors v. Bd. of Educ. of Kent County*, 387 U.S. 105, 111 (1967). It would be unconstitutional for Kansas to exclude otherwise qualified citizens from voting in a direct election of state supreme court justices based upon occupation. *See Gray v. Sanders*, 372 U.S. 368, 380 & 387 n.6 (1963) ("[T]here is no indication in the Constitution that . . . occupation affords a permissible basis for distinguishing between qualified voters within the State."). It would also be unconstitutional to weight vote based upon occupation. *See id.* The State cannot avoid this by having justices appointed by another officials or entity who was chosen by means of an election that excluded voters on the very same basis.

Under the federal Constitution, justices and judges are nominated by the President, and then appointed subject to Senate confirmation. U.S. Const. art. II, § 2. The President and Senators are selected through elections in which no otherwise qualified citizen is excluded. U.S. Const. amend. XVII; *id.* art. II, § 1; *Hadley*, 397 U.S. at 52. Even if there were a further level of appointing power in between, if an election took place anywhere in the system that resulted in the selection of judicial officials, that election would have to conform with the requirements of Equal Protection.

    **4.**    **Kansas Cannot Show That the Exclusion of Non-Attorneys from the Selection of Members of the Nominating Commission Is Narrowly Tailored to a Compelling Government Interest.**

The selection of judges in Kansas denies non-attorney Kansans the franchise in the election of the attorney members of the Kansas Supreme Court Nominating Commission. By

permitting only members of the bar to vote in the elections of the attorney members of the Commission, non-attorneys are denied the right to vote and equal participation in the selection of governing officials. Laws "granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives." *Kramer*, 395 U.S. at 627. That is precisely the effect of the way Kansas selects its judiciary. Kansas cannot demonstrate that this is a narrowly tailored means of achieving a compelling state interest.

Kansas's system for selecting its judges suffers from the same fundamental defects as the laws at issue in the *Kramer* line of cases. All Kansans have a substantial interest in and are significantly affected by the state judiciary. As the Supreme Court has stated, "state court judges possess the power to 'make' common law . . . [and] have immense power to shape the States' constitutions as well." *White*, 536 U.S. at 784. Judges do not merely, or even predominantly, affect Kansas attorneys, but all Kansans.

The Kansas supreme court, for example, has the authority to interpret the Kansas constitution and statutes, to which all Kansans are subject. *See, e.g.*, *State v. Nelson*, 502 P.2d 841, 846 (Kan. 1972). The supreme court is also the ultimate arbiter of the rights and duties of all Kansans under the constitution and statutes of the State. *See, e.g.*, *Samsel v. Wheeler Transp. Servs., Inc.*, 789 P.2d 541, 549-50 (Kan. 1990).

Despite being governed by the judiciary, all non-attorneys are excluded from the election five or the nine members of the Commission that has the exclusive power to nominate judges. And the Governor is required to choose one of the nominees for appointment. If the Governor rejects all the nominees, the sitting Chief Justice of the Kansas supreme court must choose.

**Plaintiffs' Summary Judgment Memo**      16

Neither are the nominations subject to any kind of legislative confirmation. The Commission is not an advisory entity. Rather, it has the exclusive and binding power to nominate judges.

Despite this important role served by the Commission, only bar members are permitted to vote for five of the nine members. Therefore, non-attorneys do not have an equal voice in determining who their state judges are. But, just like in *Kramer* and *Hellebust*, the class excluded from voting (non-attorneys) are not "substantially less interested or affected than those the statute includes." *Cipriano*, 395 U.S. at 704. "Such unequal application of fundamental rights [is] repugnant to the basic concept of representative government." *Little Thunder*, 518 F.2d at 1258. Because the primary role of the Commission is to decide who becomes a judge in Kansas, all qualified Kansas citizens have a substantial interest in and are materially affected by who is on that Commission.

**B.    The Election of the Attorney Members of the Commission Does Not Qualify as a Limited Purpose Election.**

The facts in this case differ substantially and significantly from the cases where the Supreme Court has upheld a restriction of the vote to a certain group of citizens while excluding everyone else.

*Salyer Land Co. v. Tulare Lake Basin Water Storage District* upheld a law permitting only landowners to vote for the board of a water district because (a) the district's sole purpose was to acquire, store, and distribute water for farming in the district; (b) it provided no "general public" services; and (c) the district's "actions disproportionately affect[ed] landowners" as all of the costs for the district's projects were assessed against them. 410 U.S. at 728-29. Relevant here is how *Salyer* distinguished the *Kramer* line of cases by pointing out that in those cases the

**Plaintiffs' Summary Judgment Memo**       17

limited group permitted to vote was *not* disproportionally affected by the outcome of the election. *Id*. at 726-29. Thus, under *Salyer*, when the functions and powers of the government entity are so far removed from normal government and so disproportionately affect a specific group, a popular election might not be required.

Similarly, *Ball v. James* upheld an Arizona law that limited the right to vote in board elections for a power district to only landowners. 451 U.S. at 355-56. Furthermore, the law accorded weight to each vote in proportion to the amount of land owned by the eligible voter. *Id.* The Court stated the issue as whether "the peculiarly narrow function of this local governmental body and the special relationship of one class of citizens to that body releases it from the strict demands of the one-person, one vote principle of the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 357. The Court found in the affirmative, as the district was "essentially [a] business enterprise[], created by and chiefly benefitting a specific group of landowners." *Id.* at 368.

Thus, under *Ball*, a restricted election is constitutional when the government entity or office has a peculiarly narrow function and has a special relationship with those allowed to vote. In finding that the facts before it satisfied these requirements, the Court in *Ball* rested its conclusion on the following premises: (a) the district had only a "nominal public character," *id*. at 368, (b) "the provision of electricity is not a traditional element of governmental sovereignty," *id*., and (c) the district had a "disproportionate relationship . . . to the specific class of people whom the system ma[de] eligible to vote," *id.* at 370.

But the Kansas Supreme Court Nominating Commission shares none of the characteristics of the water districts in *Salyer* and *Ball*. First and foremost, the Commission

performs a normal function of government and exercises traditional government authority, even if only the single power of nominating the judiciary. *See Salyer*, 410 U.S. at 728-29; *Ball*, 451 U.S. at 366, 368. *Salyer* and *Ball* did not provide an exhaustive list of normal government functions and gave no indication that the entity's functions were narrow if they were few. *Ball*, 451 U.S. at 366. The power to nominate is not a private power and has never been exercised by a private entity in any of the governments of the United States. A function granted in a constitution is, by definition, a normal and traditional function of government. American Heritage College Dictionary 298 (3d ed. 1993). Many private entities provide water services, but the nomination of government officials is inherently a traditional element of government sovereignty. *Ball*, 451 U.S. at 368.

Furthermore, the entities are different in origin. *Ball*, 451 U.S. at 367 (finding that the "originating purpose of the District" was "relatively narrow"). Unlike water districts, the Commission does not have a "nominal public character." *Id.* at 368. The water districts were pre-existing private business entities co-opted by the government for the purpose of simplifying revenue. *Id.* at 369. In sharp contrast, the Commission is an entity established by the constitution as part of the structure of the government to determine who the highest officers of a branch of government will be.

The Commission is part of the structure of the government and exercises government power. All Kansans are substantially interested in the exercise of this government power, because all Kansans have an interest in who exercises judicial power. All Kansans are affected by the exercise of this power, because all Kansans are subjected to the law as interpreted and applied by the judiciary. *See Republican Party of Minn. v. White*, 536 U.S. 765, 784 (2002).

**Plaintiffs' Summary Judgment Memo**      19

This is not a political interest. Rather, it is an interest that stems from the fact that governments in this country receive power by the consent of the governed. The litigant standing before the judge who will decide whether and how often she will see her children has a substantial interest in who is exercising that power over her. The litigant standing before the judge who will decide whether he will spend the rest of his life in prison has a substantial interest in who that judge is. It is inconceivable that all Kansans have a substantial interest in having a fair, qualified, and independent judiciary and yet somehow apparently do not have a substantial interest in how that judiciary is selected.

Thus, there is no analogous disproportionate relationship between the Commission and a group of the population. In *Salyer* and *Ball*, landowners were the only group bearing the cost of the water districts and water was distributed based upon land. *Salyer*, 410 U.S. at 729-30; *Ball*, 451 U.S. at 370-71. Attorneys are no more affected by or interested in who judges are than the litigants they represent. Even if attorneys were more interested and affected, everyone else must be "in fact *substantially less* interested or affected." *Kramer*, 395 U.S. at 632. The State has not shown how the interests of attorneys is more than merely "different," *Kolodziejski*, 399 U.S. at 209, or that the interests of the general population are substantially lower.

Here, Kansas cannot show that the functions of the Nominating Commission, much less the state judiciary, are "so far removed" from the normal functions of government and serve such a "peculiarly narrow function" to satisfy the exception to the demands of the Equal Protection Clause. The members of the Commission are given the power to select nominees to fill vacant positions on Kansas's courts, including the supreme court. The Governor must select one of the nominees, so that the Commission decides who will sit in justice over the citizens of Kansas. The

nomination of justices and judges is a traditional function of government. The Commission has the power and duty to determine the composition of the third branch of government in the State of Kansas. *See* Kan. Const. art. III, § 5. The Commission does not have a "nominal" public character and the nomination and appointment justices and judges is a traditional governmental function. *See Hellebust*, 42 F.3d at 1334 ("Thus, while an entity's 'nominal public character' may shield it from the demands of the Fourteenth Amendment and permit a rational relationship analysis, once the line is crossed into the government powers arena, one person, one vote applies.") (citations omitted).

Furthermore, Kansas cannot show that the functions of the Commission "so disproportionately affect" the members of bar that they have a "special relationship" with the Commission to satisfy the requirements of the limited purpose exception. While the members of the Kansas bar might have *different* interests in who the justices and judges are in Kansas, this interest is not substantially *greater* than the interest of all Kansans. *See Kolodziejski*, 399 U.S. at 212. The Plaintiffs are subject to the jurisdiction and decisions of the justices and judges of Kansas's courts. The Plaintiffs are subject to the laws and constitution of the State of Kansas, which is interpreted and applied by the justices and judges of Kansas's courts. They are legitimately interested in the composition of the third branch of their own government. The selection and nomination of justices and judges substantially affects all of Kansans.

Therefore, the narrow Equal Protection exception described in *Salyer* and *Ball* has no application to the selection of members of the Nominating Commission, which is instead governed by the strict Equal Protection review mandated by *Kramer*.

**Plaintiffs' Summary Judgment Memo**      21

III.    **The Supreme Court's "Reapportionment Doctrine" Cases Are Irrelevant.**

The Supreme Court has applied the Equal Protection Clause to the right to vote in other contexts as well. In the *Reynolds* line of cases, the Court developed the "reapportionment doctrine" dealing with inequality arising from malapportionment of population in voter districts. *Morris*, 489 U.S. at 691-94. *Reynolds* established "the general rule of population equality between electoral districts." *Id.* at 692-93. Several cases have established exceptions to this rule, but this line of cases is entirely inapposite in this case because the inequality here arises from a voter classification. *Hill*, 421 U.S. at 297-98.

A.    ***Wells***

*Wells v. Edwards*, 347 F. Supp. 453, 455 (M.D. La. 1972), *summarily aff'd*, 409 U.S. 1095 (1973), held that when a state holds elections for judges, it does not need to ensure that "equal numbers of voters can vote for proportionately equal numbers of [judges]." *Hadley*, 397 U.S. at 56. The Supreme Court's summary affirmation of *Wells*, however, does not mean that all applications of the Equal Protection Clause have no relevancy to the selection of the judiciary. Rather, it simply means that malapportionment in judicial election districts is not a violation of the Fourteenth Amendment. *See Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952-54; *Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 211-12. It does not follow that the other guarantees of the Equal Protection Clause, such as the "principles of *Kramer*," *Hill*, 421 U.S. at 297, are irrelevant to the selection of a state's judiciary.

*Wells* does not mean that a state may establish qualifications other than residency, age, and citizenship for participation in judicial elections on rational basis alone. If this were

otherwise, it would lead to the absurd result that a state could exclude citizens from judicial elections based upon occupation, impose a poll tax, or any other factor they deem reasonable.

*Wells* is also inapposite because the Commission exercises a traditional executive function. U.S. Const. art. II, § 2. Though the Commission was created in Article III of the Kansas Constitution, which establishes the judicial branch of government, it is more properly an executive entity because the nomination of judges is traditionally an executive function. Therefore, the *Wells* decision lends no support for the notion that the election of Commission members is somehow immune from the commands of the Equal Protection Clause.

**B.     *Sailors***

The Equal Protection Clause is implicated here even though justices and judges are ultimately appointed, rather than directly elected. The overall nature of the selection process is not determinative of whether Equal Protection has been violated. *Kramer*, 395 U.S. at 629-30. The Equal Protection Clause is implicated by a state election, *id.* at 629; *Sailors*, 387 U.S. at 111, and there is an election here in which "some resident citizens are permitted to participate and some are not," *Kramer*, 395 U.S. at 629. When a state creates an appointive process, the Equal Protection Clause is relevant to how those who make the appointments were selected. *Id.*

*Kramer*, for example, involved the direct election of a local school board and the Supreme Court held that the state could not exclude citizens who were otherwise qualified by residency and age from participating. The Court considered it irrelevant for purposes of scrutiny that the board could have been appointed. *Kramer*, 395 U.S. at 628-29. The Supreme Court's analysis would have been unchanged had the board been appointed by an officials who were

**Plaintiffs' Summary Judgment Memo        23**

chosen through an election in which some resident citizens were permitted to participate and others were not. *Id.* at 629. In fact, the Court explicitly anticipated such a situation:

> For example, a city charter might well provide that the elected city council appoint a mayor who would have broad administrative powers. Assuming the council were elected consistent with the commands of the Equal Protection Clause, the delegation of power to the mayor would not call for this Court's exacting review. On the other hand, if the city charter made the office of mayor subject to an election in which only some resident citizens were entitled to vote, there would be presented a situation calling for our close review.

*Id.* If an official is appointed by another official who is not elected consistent with the commands of Equal Protection, then the appointment of that official must be "necessary to promote a compelling state interest." *Id.* at 627.

The Court in *Kramer* further noted that the system would not violate Equal Protection if the school board members were appointed, *because* all qualified voters are permitted to vote for the appointing official. *Id.* at 627 n.7 ("[I]f school board members are appointed . . . [e]ach resident's formal influence is perhaps indirect, but it is equal to that of other residents.") Therefore, these cases expressly apply in instances where the state uses appointment instead of direct election. Such is the arrangement in the selection of judges in Kansas, so that the State must show that the nomination of justices and judges by the Commission, when all non-attorneys are excluded from the election of five of the nine Commission members, passes strict scrutiny.

A hypothetical based on the relevant authorities is illustrative. In *Kramer*, only qualified voters who also either owned real property in the district or had children enrolled in the local public schools were permitted to participate in the election for district school board members. *Kramer*, 395 U.S. at 622. The Supreme Court held that this exclusion warranted close scrutiny under the Equal Protection Clause and was unconstitutional because it excluded otherwise

qualified voters from participating in an election in which they had an interest. *Id.* at 626-27. What if, instead of limiting the franchise to land-owners and parents, the state in *Kramer* had established that the school board would be appointed by an entity elected exclusively by land-owners and parents? Surely, the State could not circumvent the commands of the Equal Protection Clause by delegating authority to other entities in this manner. *Sailors*, 387 U.S. at 108 & n.5.

*Sailors*, a case applying the "reapportionment doctrine," is not to the contrary. *Sailors*, 387 U.S. at 111. That case simply held that equal protection was not violated when local school boards of differing populations each appointed one member of the county board. *Id.* at 110-11. This holding, on its face, has no bearing whatsoever on voter qualifications, but treats only apportionment of representation. *Salyer*, 410 U.S. at 730. Rather, in contrast to what happened in *Sailors*, Plaintiffs here are challenging a voter qualification placed upon the underlying elections. *Sailors*, 387 U.S. at 111 ("For while there was an election here for the local school board, no constitutional complaint is raised respecting that election.").

## IV. Older District Court Decisions Were Incorrectly Decided.

Three federal district courts have considered challenges to similar judicial selection systems in Missouri, Indiana, and Alaska. *African-American Voting Rights Legal Defense Fund, Inc. v. Missouri*, 994 F. Supp. 1105 (E.D. Mo. 1997) ("*AAVRLDF*"); *Bradley v. Work*, 916 F. Supp. 1446 (S.D. Ind. 1996); *Miller, et al. v. Carpeneti, et al.*, 3:09-cv-00136-JWS (D. Alaska Sept. 15, 2009). These cases are irrelevant because *Hellebust* provides the proper and controlling framework for the application of the Equal Protection Clause to a voter eligibility classifications.

**Plaintiffs' Summary Judgment Memo**          25

And these cases are unpersuasive because they made fundamental errors and their reasoning is inconsistent with established Supreme Court precedent.

## Conclusion

For the reasons given above, the relevant portions of Kan. Const. art. III, § 5(e) and Kan. Stat. §§ 20-119 through -123 are unconstitutional both facially and as-applied to Plaintiffs. Plaintiffs are entitled to have summary judgment entered in their favor.

Dated:  September 22, 2010

Respectfully submitted,

s/ Joseph A. Vanderhulst
James Bopp Jr., Ind. #2838-84
Josiah Neeley, Tex. #24046514
Joseph A. Vanderhulst, Ind. #28106-20
Lead Counsel for All Plaintiffs
JAMES MADISON CENTER FOR FREE SPEECH
1 South Sixth Street
Terre Haute, Indiana 47807
Tel: 812.232.2434
Fax: 812.235.3685

s/ Richard A. Macias
Richard A. Macias
Bar Number 12192
Local Counsel for All Plaintiffs
LAW OFFICES OF RICHARD MACIAS
901 N. Broadway
Wichita, Kansas 67214
Tel: 316-265-5245
Fax: 316-265-3953

**Certificate of Service**

I hereby certify that on September 22, 2010, I electronically filed the foregoing with the

clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the

following:

Stephen R. McAllister
Todd N. Thompson
Thompson Ramsdell & Qualseth, P.A.
333 W. 9th Street
P.O. Box 1264
Lawrence, Kansas 66044
Attorneys for Defendants

Patrick J. Hurley
Office of Attorney General Steve Six
Memorial Hall, 2nd Floor
120 SW 10th Street
Topeka, Kansas 66612
Attorneys for Defendants

s/ Richard A. Macias
Richard A. Macias
Bar Number 12192
Local Counsel for Plaintiffs
Law Offices of Richard Macias
901 N. Broadway
Wichita, Kansas 67214
Tel:    316.265.5245
Fax:    316.265.3953
maciaslaw@ack.kscoxmail.com
