United States District Court
District of Kansas

| | |
|---|---|
| **Robert Dool**, **Julie Brown**, **Donald D. Rosenow**, and **Thomas C. Schermuly**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **Anne E. Burke**, in her official capacity as Chairman of the Kansas Supreme Court Nominating Commission; **Kerry E. McQueen**, **Patricia E. Riley**, **Matthew D. Keenan**, and **Jay F. Fowler**, in their official capacities as Attorney Members of the Kansas Supreme Court Nominating Commission; **Carol Gilliam Green**, in her official capacity as Clerk of the Kansas Supreme Court, <br><br> *Defendants*. | **Case No.** 6:10-cv-01286-MLB-KMH |

**Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Robert Dool, Julie Brown, Donald D. Rosenow, and Thomas C. Schermuly file their response in opposition to Defendants' Motion to Dismiss.

## Introduction

Plaintiffs have stated a claim on which relief can be granted. Supreme Court and Tenth Circuit precedent establishes a set of principles for applying the Equal Protection Clause to situations in which a state has granted the franchise in an election on a selective basis. Kansas holds elections for members of the Kansas Supreme Court Nominating Commission and restricts the franchise according to occupation. Defendants base their arguments on the incorrect line of

1

**Plaintiffs' Response to Motion to Dismiss**

precedents, taking them out of context and extrapolating principles that are not found in the authorities they cite.

First, the fact that a system may ultimately be appointive does not mean that any underlying elections are free from the restraints the Equal Protection Clause places on voter eligibility classifications. Second, states are not free to establish franchise classifications on judicial elections justified by rational basis alone. Third, whether to extend the franchise to the entire electorate in a given election is not left to the discretion of the state, but must either be necessary to promote a compelling state interest or satisfy the narrow exception to that rule. Fourth, the state must prove that all those excluded from the franchise in a limited purpose election are not substantially interested in or affected in important ways by the powers of the elected official. Finally, Defendants fundamentally mistake the focus of the limited purpose exception by ignoring the breadth of the effect of the Commission's function.

For these reasons, Defendants' motion to dismiss should be denied.

## Argument

**I.     The Election of the Attorney Members of the Nominating Commission Violates the Equal Protection Clause According to *Kramer* and *Hellebust*.**

This case involves a challenge to the method Kansas has adopted for selecting the highest officers of the judiciary branch of government, who exercise the judicial power of the State of Kansas. The system is straightforward. Judicial officers are selected by the Kansas Supreme Court Nominating Commission and the Governor of Kansas, without any advice or confirmation from the Kansas legislature. The Nominating Commission, as its name suggests, is given the power to nominate judicial officers, and the Governor appoints the officer from the nominations

made by the Commission. The role of the Nominating Commission is not advisory: the Governor must select from the nominations made by the Commission.

### A. The Commands of Equal Protection Apply Because Kansas Holds Elections and Restricts the Restricts the Franchise in Those Elections.

According to the Kansas constitution, five of the nine members of the Nominating Commission are elected. And Kansas limits the franchise in these elections to members of the Kansas bar. Kan. Const. art. III, § 5(e); Kan. Stat. §§ 20-119, -120. In order to participate in these elections to select the members of the Nominating Commission, a resident of Kansas must meet two eligibility requirements. First, the person must be a resident of the relevant congressional district (or of Kansas for the chairman). And second, the person must be a member of a specific occupation: they must be an attorney. There is no age or citizenship qualification to participate in these elections. These requirements exclude all non-attorneys from participation in the election of the members of the Commission.

Kansas, therefore, discriminates among its citizens in who may participate in these elections. These elections are held by the State, and not by a private entity or organization. The Equal Protection Clause, however, "restrains the States from fixing voter qualifications which invidiously discriminate." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966). Therefore, Kansas's decision to restrict the franchise in the elections of the members of the Commission must be shown to have been necessary to promote a compelling state interest. *Id.* at 670; *Kramer*, 395 U.S. at 626; *Cipriano v. City of Houma*, 395 U.S. 701, 704-06 (1969). The Tenth Circuit has recognized this standard several times. *Hellebust v. Brownback*, 42 F.3d 1331, 1333 (10th Cir. 1994); *City of Herriman v. Bell*, 590 F.3d 1176, 1185-86 (10th Cir. 2010)

("When a state law discriminates among eligible voters within the *same* electoral district, strict scrutiny review applies, and compelling government interests must justify restrictions on the franchise.").

The sole issue in this case is whether the occupational requirement of Kan. Const. art. III, § 5(e) and Kan. Stat. §§ 20-119 and -120 "violate[s] the Fourteenth Amendment's command that no State shall deny persons equal protection of the laws." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969). Plaintiffs do not challenge the residency requirement because Kansas "ha[s] the power to to impose reasonable citizenship, age, and residency requirements on the availability of the ballot." *Id.* at 625. But all other classifications restricting the franchise "cannot stand unless the . . . State can demonstrate that the classification serves a compelling state interest." *Hill v. Stone*, 421 U.S. 289, 297 (1975). With respect to all other classifications, the Supreme Court has established that "presumptively, when all citizens are affected [by an election], the Constitution does not permit . . . the exclusion of otherwise qualified citizens from the franchise." *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 209 (1970). Furthermore, the Supreme Court has expressly found that "there is no indication in the Constitution that . . . occupation affords a permissible basis for distinguishing between qualified voters within the State." *Gray v. Sanders*, 372 U.S. 368, 380 (1963).

The Equal Protection Clause, therefore, applies here because Kansas holds an election for a public official and then restricts the franchise in that election based upon occupation. *Kramer*, 395 U.S. at 627 ("Therefore, if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must

4

**Plaintiffs' Response to Motion to Dismiss**

determine whether the exclusions are necessary to promote a compelling state interest."). The Supreme Court established the analysis, which has been employed by the Tenth Circuit, for examining the constitutionality of voter qualifications in *Kramer* and following cases. *Hill*, 421 U.S. at 297-98 ("[T]he principles of *Kramer* apply to classifications limiting eligibility among registered voters."). Defendants fundamentally mischaracterize Plaintiffs challenge by completely ignoring the relevant line of precedent.

### B.     The Principles of *Kramer* Apply to Voter Eligibility Restrictions.

Plaintiffs have not challenged the Kansas judicial election system based upon the line of cases starting with *Reynolds*. (*Contra.* Doc. 20 at 3). The principle mentioned by Defendants from that line of cases is not the proper standard for the examination of a voter qualification. *See Hill*, 421 U.S. at 297-98; *Hellebust*, 42 F.3d at 1333; *Mo. Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 808 (8th Cir. 2007) (tracing the line of cases developing the law on "voter eiligibility requirements"). Rather, that is the standard for determining the constitutionality of the apportionment of voting districts under the Equal Protection Clause. *Bd. of Estimate v. Morris*, 489 U.S. 688, 691-93 (1989). The Supreme Court has thus made it clear that the *Kramer* and *Reynolds* lines of cases, though both applying the Equal Protection Clause to elections, are distinct lines and establish analyses for different situations. *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 730 (1973) ("Even though appellants derive no benefit from the *Reynolds* and *Kramer lines of cases* . . . .") (emphasis added). Because this case has to do with a voter qualification and has nothing to do with geographic apportionment of voting districts, the *Reynolds* line and standard is quite simply inapposite here.

**Plaintiffs' Response to Motion to Dismiss**

As recognized in *Hellebust*, there is a narrow exception to the rule that "restrictions on the franchise other than residence, age, and citizenship must promote a compelling state interest in order to survive constitutional attack." *Hellebust*, 42 F.3d at 1333 (quoting *Hill*, 421 U.S. at 295). This is the limited purpose exception established in *Salyer* and *Ball*. Defendants misapply the standards from this exception.

The United States Constitution does not require the election of non-legislative government officials. *Sailors v. Bd. of Educ. of Kent County*, 387 U.S. 105, 108 (1967); *Kramer*, 395 U.S. at 629. But when the state holds an election, it must fully respect the commands of the Equal Protection Clause. *Harper*, 383 U.S. at 670; *Kramer*, 395 U.S. at 626-27. These commands must be obeyed whether the office is legislative, executive, or judicial in nature. *Avery v. Midland County*, 390 U.S. 474, 482 (1968) (requiring adherence to the "reapportionment doctrine" of *Reynolds* to a local entity that had legislative, executive, and judicial functions); *Kramer*, 395 U.S. at 629 ("Nor is the need for close judicial examination affected because the . . . school board do[es] not have 'general' legislative powers."). So while the state has latitude in whether to have non-legislative officials elected or appointed, the "civics" classification of the entity is completely irrelevant as to how the commands of Equal Protection apply. *Id.* Here, Kansas holds elections to select the members of the Nominating Commission. Therefore, the principles of *Kramer* apply with full force to any restriction made on the franchise in these elections, unless Kansas can show that the election satisfies the limited purpose exception from *Salyer* and *Ball*.

**Plaintiffs' Response to Motion to Dismiss**

### C. The Principles of *Kramer* Apply *Because* Kansas Has Decided Not to Extend the Franchise in the Election of the Commission Members to the Entire Electorate.

Defendants maintain that the principles of *Kramer* only apply "where the franchise is granted to the electorate." (Doc. 20 at 6). According to Defendants, Kansas decided not to extend the franchise to the entire electorate and this decision was within the discretion of the State. *Id.* But this position could not be more flatly contradicted by all controlling Supreme Court authority.

In every case in the *Kramer* line, the state had decided not to extend the franchise to the entire electorate, but had granted it "on a selective basis." *Kramer*, 395 U.S. at 627. And in every case, the Court did not defer to the discretion of the state, but employed strict Equal Protection scrutiny to determine whether the state was *permitted* to so limit the franchise. *Id.* at 632 (". . . whether these elections are of the type in which the franchise *may be* so limited.") (emphasis added); *Cipriano*, 395 U.S. at 704 (". . . State *might*, in some circumstances, constitutionally limit the franchise . . . .") (emphasis added); *Hill*, 421 U.S. at 295-97. It is most decidedly not up to Kansas to decide whether to extend the franchise to the entire electorate in a given election. The default under the Equal Protection Clause is that the State may not grant the franchise on a selective basis unless it has a compelling reason or can prove that the election is not one of general interest. *Hill*, 421 U.S. at 296-97 (giving examples where the government had failed to prove that the outcome of the election was not of general interest).

The Tenth Circuit in *Hellebust* has recognized this as well, emphasizing that the focus is whether the government can prove that those excluded from the franchise are not materially

**Plaintiffs' Response to Motion to Dismiss**

affected by or interested in the outcome of the election. *Hellebust*, 42 F.3d at 1334. The decision whether to select a non-legislative official by means of appointment or election is within the State's discretion, but the decision to limit the franchise in an election must be justified before the commands of the Equal Protection Clause. If all qualified citizens "are affected in important ways" by the outcome of the election, *Kolodziejski*, 399 U.S. at 210, then the state is not allowed to restrict the franchise, but *must* extend it to all the electorate.

Defendants argue that because Kansas is not required to have the members of the Nominating Commission elected at all, it can place any rational franchise limitation on those elections. (Doc. 20 at 6). But the Supreme Court has explicitly rejected this argument. The Supreme Court has explicitly held that the need to subject voter qualifications to strict constitutional scrutiny is not affected by the fact that the officials might have been filled through appointment rather than election. *Harper*, 383 U.S. at 665 ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."); *Kramer*, 395 U.S. at 628-29; *Cipriano*, 395 U.S. at 704 ("Moreover, no less showing that the exclusions are necessary to promote a compelling state interest is required merely because the questions scheduled for the election need not have been submitted to the voters.") (quotations and citations omitted)). Thus, the Supreme Court has expressly rejected Defendants' "greater power includes the lesser" argument.

The limited purpose exception acknowledges situations in which the state is *justified* in limiting the franchise. The nominal public nature of the office and the disproportionate effect that its function has on a specific group gives the state a compelling reason to restrict the franchise to

8
**Plaintiffs' Response to Motion to Dismiss**

that group. *Kolodziejski*, 399 U.S. at 213. At the same time, the rights of those excluded are not harmed because they are not substantially interested in or materially affected by the function of the officials or entity. *Cipriano*, 395 U.S. at 704. If the restriction excludes anyone with a real interest in or who is affected by the function of the official, then the restriction is not narrowly tailored to the reason. *Kramer*, 395 U.S. at 632.

        **D.**       **Equal Protection Applies to the Elections Underlying an Appointive System.**

*Sailors* does not stand for the proposition that the voter qualification principles of *Kramer* are inapplicable to the elections within a "basically appointive" system. (*Contra* Doc. 20 at 6-7). First of all, *Sailors* dealt with alleged inequality arising from population apportionment of districts, not from any classification restricting the franchise. *Sailors*, 387 U.S. at 106-07. Therefore, it merely holds that the "reapportionment doctrine" of the *Reynolds* line does not need to be preserved through an appointive system. In fact, the *Sailors* Court explicitly rejected Defendants interpretation of its holding when it observed that "while there was an election here for the local school board, no constitutional complaint is raised respecting that election." *Id.* at 111. If there had been a constitutional complaint regarding the underlying elections, the Court's Equal Protection principles would have applied. The correct application of *Sailors* here would be that no constitutional complaint could be raised on the basis that the districts electing the Commission members are of different sizes, if that were the case.

*Kramer* also explicitly rejected the argument that the use of an appointment system means that voter qualifications on any underlying elections need not undergo strict scrutiny. The Court found that an appointment system would not violate Equal Protection if the entity doing the

9

**Plaintiffs' Response to Motion to Dismiss**

appointing "were elected consistent with the commands of the Equal Protection Clause." *Kramer*, 395 U.S. at 629. In other words, if it would violate the Constitution to restrict the franchise in the election of a certain government official, it would also violate the Constitution to have that official appointed by an entity elected with the same franchise restrictions. If this were not the case, then the state could effect the same invidious classification by having an official appointed by an entity elected with the very same voter qualifications that the state would not be permitted to impose if the official were directly elected. Thus, it is demonstrably false that the Supreme Court's jurisprudence regarding voter qualifications is inapplicable simply because the system might be "basically appointive."

The principles of *Kramer* are fully applicable to executive and judicial offices. Defendants do not and cannot cite any authority establishing that classifications restricting the franchise in elections for executive or judicial officers are somehow immune to strict Equal Protection scrutiny. The Supreme Court has held that "the concept of one-man, one-vote *apportionment* does not apply to the judicial branch of government." *Wells v. Edwards*, 347 F. Supp. 453, 454 (M.D. La. 1972), *summarily aff'd*, 409 U.S. 1095 (1973) (emphasis added). More than one Circuit Court has held that *Wells* simply means that voting districts for judges do not need to be of equal population in accordance with the *Reynolds* line of cases. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952-54 (4th Cir. 1993); *Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 211-12 (5th Cir. 1980). But there is absolutely no authority for extending this holding to assert that voter qualifications in judicial elections are not subject to the close scrutiny of *Kramer*. If Defendants' reading of *Wells* were correct, then Kansas could

10
**Plaintiffs' Response to Motion to Dismiss**

hold direct elections for judges and restrict the franchise to attorneys. Indeed, that is the necessary and logical conclusion of their entire argument.

II.     **The Election of Commission Members Does Not Satisfy the Limited Purpose Exception.**

In order to justify discriminating among voters and allowing some of them to participate in an election while excluding others, the state must prove that the exclusion is necessary to promote a compelling government interest. There is a narrow exception to this rule for situations where, "by reason of its special limited purpose and of the disproportionate effect of its activities," an entity may be selected through a limited election. *Salyer*, 410 U.S. at 728; *Hellebust*, 42 F.2d at 1333. But Defendants do not present this test consistent with established precedent and misapply it here.

A.     **To Satisfy the Limited Purpose Exception, Kansas Must Prove That Non-Attorneys Are Not Substantially Interested in or Affected in Important Ways by the Function of the Nominating Commission.**

The fundamental principle behind the limited purpose test is that "presumptively, when all citizens are affected in important ways [by the outcome of an election] . . . the Constitution does not permit . . . the exclusion of otherwise qualified citizens from the franchise." *Kolodziejski*, 399 U.S. at 209. Therefore, as a prerequisite for finding that a specific group is disproportionately interested in and affected by an election, the state must prove that all otherwise qualified citizens do not have a substantial interest in and are not affected in important ways by the outcome of the election. Whether a limited purpose election is justified depends "on whether all those excluded are in fact substantially less interested or affected that those" included. *Kramer*, 395 U.S. at 632. The Court in *Salyer* began its analysis by distinguishing the

**Plaintiffs' Response to Motion to Dismiss**

case before it from earlier cases in this regard. Unlike in *Kramer*, the water district election in *Salyer* did not exclude "persons who had distinct and direct interests." *Salyer*, 410 U.S. at 726. Unlike in *Cipriano*, the water district election did not "affect virtually every resident." *Id.* at 727. And unlike in *Kolodziejski*, those excluded from the franchise did not "have a great interest" in the outcome of the election. *Id.* The Tenth Circuit in *Hellebust* made the same emphasis on the necessity of establishing that those excluded are not interested in or affected by the elected entity. *Hellebust*, 42 F.2d at 1334 ("Our focus is not whether some of the Board's activities deal exclusively with agriculture, but whether its powers transcend that ground and materially affect residents . . . who are not represented by the present method of Board selection.").

Plaintiffs have presented many ways in which all Kansans are substantially interested in and affected by the power exercised by the members of the Nominating Commission. (Doc. 5-1 at 21-23). Defendants have made no showing in opposition to prove that Plaintiffs and all Kansans are substantially less interested in the nomination of judges than are attorneys or are not affected in material ways by the nomination of judges. In order to justify a limited franchise, the State must carry this burden. *Hill*, 421 U.S. at 296-97.

**B.     It Is Not Enough for Attorneys to Have Different Interests.**

Instead, Defendants suggest that the Kansas supreme court affects the everyday lives of Kansas lawyers "in ways that do not apply" to all other Kansans. The only two ways suggested by Defendants are that the supreme court regulates the legal profession and that a judge must have been an attorney. (Doc. 20 at 9-10). These may be ways in which the judiciary affects attorneys that do not affect others, but it hardly proves that the power exercised by judges

**Plaintiffs' Response to Motion to Dismiss**

disproportionately affects attorneys. Indeed, the regulation of the legal profession is not the primary, nor even an essential, element of the judicial power of government. The primary function of the court is to exercise the judicial power of the Kansas government. Kan. Const. art. III, § 1. And this power affects all Kansans in material ways. *Republican Party of Minn. v. White*, 536 U.S. 765, 784 (2002) ("[S]tate court judges possess the power to 'make' common law . . . [and] have immense power to shape the States' constitutions as well.").

In the end, it is not enough that the interests of and affects on attorneys might be "different." *Kolodziejski*, 399 U.S. at 209 (finding it insufficient that "owners of real property have interests somewhat different" than those excluded); *contra Bradley v. Work*, 916 F. Supp. 1446, 1457 (S.D. Ind. 1996) (finding that attorney's interests "are different in nature and in scope from the interests of the general public"). As the Tenth Circuit held in *Hellebust*, "[o]nce a state agency has the authority to affect every resident in matters arising in their daily lives, its powers are not disproportionate to those who vote for its officials." *Hellebust*, 42 U.S. at 1335. The Kansas judiciary most certainly has such authority. The exercise of the judicial power of the state does not disproportionately affect attorneys, not least because that power is supposed to be exercised so as to afford equal protection under the law.

Interestingly, Defendants have not attempted to show how the functions of the Nominating Commission itself disproportionately affect attorneys. This is the entity whose election is actually in question. The purpose of the Commission and the goal of the nominations is to achieve a judiciary of the highest integrity and ability. Kan. Stat. § 20-133. It surely cannot

**Plaintiffs' Response to Motion to Dismiss**

be debated that all Kansans are substantially interested in this purpose and are materially affected by the quality of the judiciary.

      **C.**    **The Nominating Commission Exercises General Government Power and a Traditional Governmental Function.**

In the same way that Defendants look to the supposed effect that the Kansas supreme court has on attorneys in order to argue that attorneys are disproportionately affected by the functions of the Commission, so one must look to the functions and powers of the Kansas supreme court in order to determine whether the Commission exercises normal government power. If a government official's function is to nominate or appoint another official, it is only logical to look to the power exercised by the appointed official to determine the nature of the appointing official's power. There is an enormous difference between the power to nominate the members of a water district board and the power to nominate the highest officials of an entire branch of government.

In order to satisfy the limited purpose exception, the State must show that the Nominating Commission exercises a "special limited purpose," *Salyer*, 410 U.S. at 727-28, and does not exercise general government power or perform an "important governmental function," *Ball*, 451 U.S. at 466-68. Such an entity does not exercise "what might be thought of as 'normal governmental' authority." *Salyer*, 410 U.S. at 729. On the other hand, even if some of the entities powers are of a "nominal public character," "once the line is crossed into the governmental powers arena" the limited purpose exception cannot apply. *Hellebust*, 42 F.3d at 1334. Accordingly, if the Commission's power comprises "part of the normal functions of state government," *Salyer* and *Ball* do not apply. *Id.* at 1335.

Defendants argue that the fact that the Commission has a single function qualifies it as a limited purpose entity. But the test does not ask how many functions the entity has, but rather the reach of the effect of that function. Defendants cite no authority for the idea that a government entity's powers are narrow or limited if they are few. The test established in *Salyer* and *Ball*, as followed in *Hellebust*, looks to whether the entity exercises normal governmental power, *Hellebust*, 42 F.3d at 1334, or performs a function that is a traditional element of governmental sovereignty, *Ball*, 451 U.S. at 368. One is enough.

The nomination of the judiciary is a traditional government function. It has never been exercised by a non-government individual or entity in any state in the history of this country. This is evidenced by the fact that the Commission is created by the Kansas constitution to perform this vital function. Furthermore, the state judiciary exercises general governmental power: the judicial power of the government of Kansas. Kan. Const. art. III, § 1.

Defendants' argument that the Commission does not exercise general governmental power "within the meaning of the case law," is artificially narrow. (Doc. 20 at 11-12). The lists of powers and functions from the Supreme Court and Tenth Circuit cases cited by Defendants were not intended to be exhaustive, but reflected the powers and functions of the administrative entities before them. *Avery*, 390 U.S. at 482-83; *Hellebust*, 42 F.3d at 1334. The cases cited by Defendants involved *extensions* of Equal Protection principles to the selection of local administrative entities, which principles had alrady been considered applicable to state entities. It does not follow that a government official does not exercise general government authority if its power is not on the list. Indeed, the Kansas supreme court exercises the judicial power of the

15

**Plaintiffs' Response to Motion to Dismiss**

state government, which is not on Defenants' list. (Doc. 20 at 11-12). But it can hardly be argued that a county commissioners court exercises general government power while a state supreme court does not.

The effect of the Nominating Commission's function is to determine the composition of the branch of government exercising the judicial power. The nominations made by the Commission are binding and cannot be rejected. It does not merely screen applicants or make recommendations. Defendants fundamentally mistake the focus of the "limited purpose" or "special" exception. (Doc. 20 at 13). The test asks whether the *effect* of an entity's power is "limited" to a certain group of people who therefore have a "special" relationship with the entity so that the state is justified in limiting the franchise *to that group of people*. *Ball*, 451 U.S. at 370-71. An essential part of that test is whether the entity merely has a "nominal public character" or instead performs a normal traditional government function. *Hellebust*, 42 F.3d at 1334. Whether the entity performs a single simple function is completely irrelevant to this analysis. The proper focus for the Court, as established by *Hellebust*, is whether the Commission's power, no matter how simple or singular, materially affects non-attorneys in Kansas. *Id.*

Every case where a court has found a limited purpose exception warranted has involved a "nominally public" entity. That is, the entity was essentially a non-government entity co-opted by the government for administrative purposes. The entity was not essentially governmental in nature, but either existed privately before or did not exercise a function traditionally exercised by the government. *See, e.g., Ball*, 451 U.S. at 368 (noting that "the state legislature has allowed

**Plaintiffs' Response to Motion to Dismiss**

water districts to *become* nominally public entities") (emphasis added); *Plowman v. Massad*, 61 F.3d 796, 798 (10th Cir. 1995) (finding that a governing board of dentists was a limited purpose entity). The Board of Governors of the Registered Dentists of Oklahoma, for example, is simply a professional association that happens to have be regulated by the state. It is inherently "nominally public." The practice of dentistry long predates its government regulatory board and is not a traditional government function. The Nominating Commission, by contrast, was created by the state constitution to exercise the sovereign function of nominating the state judiciary. There is nothing "nominally public" about the origin and function of the Commission. Those entities that have satisfied the limited purpose exception are therefore nothing like the Nominating Commission. And the extension of the exception to include a state-level entity, created by the state constitution, to perform an inherently governmental function, would be an extreme and unprecedented application of *Salyer* and *Ball*.

As the State cannot prove that the Nominating Commission has a narrow and limited focus which disproportionately affects attorneys as a group, the proper level of scrutiny is strict and not rational basis.

**Plaintiffs' Response to Motion to Dismiss**

## Conclusion

For the reasons given above, for the reasons explained above, Defendants Motion to Dismiss should be denied. Instead, Plaintiffs are entitled to have summary judgment entered in their favor.

Dated:  September 24, 2010

                                      Respectfully submitted,

s/ Joseph A. Vanderhulst
James Bopp Jr., Ind. #2838-84
Josiah Neeley, Tex. #24046514
Joseph A. Vanderhulst, Ind. #28106-20
Lead Counsel for All Plaintiffs
JAMES MADISON CENTER FOR FREE SPEECH
1 South Sixth Street
Terre Haute, Indiana 47807
Tel: 812.232.2434
Fax: 812.235.3685

s/ Richard A. Macias
Richard A. Macias
Bar Number 12192
Local Counsel for All Plaintiffs
LAW OFFICES OF RICHARD MACIAS
901 N. Broadway
Wichita, Kansas 67214
Tel: 316-265-5245
Fax: 316-265-3953

**Plaintiffs' Response to Motion to Dismiss**

**Certificate of Service**

I hereby certify that on September 24, 2010, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Stephen R. McAllister
    Todd N. Thompson
    Thompson Ramsdell & Qualseth, P.A.
    333 W. 9th Street
    P.O. Box 1264
    Lawrence, Kansas 66044
    Attorneys for Defendants

    Patrick J. Hurley
    Office of Attorney General Steve Six
    Memorial Hall, 2nd Floor
    120 SW 10th Street
    Topeka, Kansas 66612
    Attorneys for Defendants

    s/ Richard A. Macias
    Richard A. Macias
    Bar Number 12192
    Local Counsel for Plaintiffs
    Law Offices of Richard Macias
    901 N. Broadway
    Wichita, Kansas 67214
    Tel:   316.265.5245
    Fax:  316.265.3953
    maciaslaw@ack.kscoxmail.com

**Plaintiffs' Response to Motion to Dismiss**