IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Robert Dool, Julie Brown, Donald D. Rosenow, and Thomas C. Schermuly, <br><br> Plaintiffs, <br> v. <br><br> Anne E. Burke, in her official capacity as Chairman of the Kansas Supreme Court Nominating Commission; Kerry E. McQueen, Patricia E. Riley, Matthew D. Keenan, and Jay F. Fowler, in their official capacities as Attorney Members of the Kansas Supreme Court Nominating Commission; Carol Gilliam Green, in her official capacity as Clerk of the Kansas Supreme Court, <br><br> Defendants. | Case No. 10-1286-MLB-KMH |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM ADDRESSING THE NINTH CIRCUIT'S DECISION IN *Kirk v. Carpeneti*

With its decision in *Kirk v. Carpeneti* the Ninth Circuit Court of Appeals has joined the growing list of federal courts rejecting the constitutional argument asserted by the Plaintiffs in this case. The following four points underscore how the reasoning of *Kirk*, when applied here, demonstrates that the Plaintiffs' attempt to strike down the Kansas Supreme Court Nominating Commission fails as a matter of law.

**I.  The Ninth Circuit Rejected the Argument that Participants in a Judicial Selection Process Must Be Popularly Elected or Appointed by Popularly Elected Officials.**

The Plaintiffs in this case argue that all participants in a state's judicial selection process must be either popularly elected or appointed by a government official who is popularly elected. *See* Plaintiffs' Complaint ¶ 51; Plaintiffs' TRO/PI Memorandum at 7-8, 15-16. The plaintiffs in *Kirk* made this same argument, and the Ninth Circuit flatly rejected it, explaining:

> The *federal courts have recognized no constitutional principle that supports Plaintiffs' contention* that all participants in the judicial selection process must be either popularly elected or appointed by a popularly elected official, and have rejected all such assertions. *Plaintiffs therefore cannot obtain the changes they seek through the courts.* Our conclusion is demonstrated by the election cases upon which Plaintiffs rely.

*Kirk*, slip op. at 16656 (emphasis added).

The primary authority relied upon by both the plaintiffs in *Kirk* and the Plaintiffs in this case is a footnote in *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 n.7 (1969). *See Kirk*, slip op. at 16662. The Ninth Circuit, however, rejected the *Kirk* plaintiffs' assertion that the Equal Protection Clause requires limiting the appointment power to officials who have been popularly elected, stating that "[t]he *Kramer* footnote does not stand for" any such proposition, and that the Supreme Court in *Kramer* "did not suggest a sweeping new constitutional rule that appointments for all positions in every branch of government must be made by an official who is popularly elected." *Kirk*, slip op. at 16662. Indeed, the Supreme Court long ago rejected that notion in *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982) (cited in Defendants' memorandum in support of the motion to dismiss).

The Plaintiffs' claim before this Court should be rejected on the same grounds. The fact that the people of Kansas chose—by an overwhelmingly approved constitutional amendment—to have Kansas lawyers vote to select the five lawyer-members of the Commission does not alter the constitutional analysis. For the reasons articulated by the Ninth Circuit in *Kirk*, which coincide with the rationale of the Defendants' previous filings before this Court, the Plaintiffs' challenge to the Kansas judicial nominating system fails as a matter of law.

II. **The Ninth Circuit Held that a State Judicial Nominating Commission Is a "Limited Purpose" Entity and Its Members Need Not Be Popularly Elected**.

The Plaintiffs have argued at length that the Kansas Supreme Court Nominating Commission is not a "limited purpose" entity within the meaning of the Supreme Court's vote

2

denial cases. Defendants' previous filings have demonstrated that the argument fails on its merits, and the decision in *Kirk* confirms the correctness of the Defendants' position.

*Kirk* recognized that under Supreme Court case law, "states and localities can restrict voting in certain elections involving so called 'limited purpose entities.'" *Kirk*, slip op. at 16658. The Ninth Circuit reaffirmed in *Kirk* the long-standing definition of "limited purpose" entities as entities that "characteristically serve only a 'special limited purpose' and have no power to impose taxes or enact laws. They do not administer 'such normal functions of government' as maintenance of streets, operation of schools, or provision of sanitation, health, or welfare services." *Id.* (internal citations omitted). The Ninth Circuit further explained that "limited purpose" entities do not administer "normal functions of government" such as "maintenance of streets, operation of schools, or provision of sanitation, health, or welfare services." *Id.* (internal citations omitted). The Ninth Circuit noted that "States and localities may therefore, without violating the Equal Protection Clause, limit the election of the governing board of such an entity to the group of people disproportionately affected by the entity's decisions." *Id.*

Applying the Ninth Circuit's reasoning to this case confirms that the Kansas Commission is a "limited purpose" entity within the meaning of the Supreme Court cases. The Kansas Commission has only a single, narrow purpose—to submit three nominees for Kansas appellate courts to the governor. The Kansas Commission has no other "powers"; it cannot impose taxes or enact (or even enforce) laws. The Kansas Commission does nothing remotely approaching any of the "normal functions of government." Instead, it has a solitary purpose—one in which lawyers have a disproportionate stake.

Finally, the Ninth Circuit observed that

> the power vested in the [Commission] is not to make the final appointment, but to nominate persons for judicial selection. The ultimate power to appoint judges is

3

>    in the Governor, who is popularly elected by the people of [the State].  In
>    addition, the people have the opportunity to reject the appointment in subsequent
>    retention elections.

*Id*. at 16662-63.  These observations are equally applicable to the Kansas Commission.

*Kirk* is entirely correct in its analysis on each of these points.  Therefore, for the same reasons set out by the Ninth Circuit, the challenge by the Plaintiffs here to the Kansas judicial nominating system also fails.

### III.    The Ninth Circuit Correctly Recognized that—if Accepted—the Plaintiffs' Novel Equal Protection Theory Would Call into Question the Constitutionality of the Appointment Systems for Federal Magistrate and Bankruptcy Judges.

The Ninth Circuit recognized that the repercussions of the Plaintiffs' argument are not limited to state judicial nominating commissions.  Rather, the Plaintiffs' constitutional theory, if accepted, would call into question "well-established federal judicial appointments that do not conform to Plaintiffs' desired universal principle."  *Kirk*, slip op. at 16663.  In particular, *Kirk* pointed to two federal appointment procedures that would be jeopardized by Plaintiffs' constitutional construction:  (1) federal magistrate judges, who "are nominated by merit selection panels composed of lawyers and community members, and then appointed by a majority of district court judges in the district where the magistrate is to serve"; and (2) federal bankruptcy judges, who "are nominated by merit screening committees and then appointed by federal appellate judges."  *Id*.

The Ninth Circuit aptly observed that "[i]n both cases, neither the judges nor the members of the nominating body are popularly elected."  *Id*.  Furthermore, these selection systems were created by Congress, *see* 28 U.S.C. §§ 631(a) & (b)(5), 152(a)(1), and demonstrate that Congress, like all the federal courts to have considered it, has rejected Plaintiffs' novel constitutional theory.

4

## IV.     The Ninth Circuit Could Have Been Discussing This Case When It Rejected the Equal Protection Challenge to the Alaska Judicial Nominating System.

The Ninth Circuit's reasoning in *Kirk v. Carpeneti* can and should be adopted to dispose of this case. At very nearly the same time that the State of Alaska adopted its judicial nominating system by way of a constitutional convention, Kansas was overhauling its own judicial selection system to prevent any possibility of shenanigans similar to the "Kansas Triple Play." Elmer Hoge, a prominent political figure of the time, opined that the Triple Play "has brought discredit upon the Supreme Court." *Change Asked in Kansas Law*, KANSAS CITY TIMES, Jan. 7, 1957. An article covering the judicial reform effort noted that "[t]he maneuver of this week could not have been pulled off in Missouri," which had already implemented nonpartisan judicial nominating commissions. *Political Courts a Hot Kansas Issue*, KANSAS CITY STAR, Jan. 7, 1957. (Copies of the referenced articles are attached as Appendix A.)

Furthermore, while Alaska's judicial selection system was chosen by delegates at a constitutional convention, Kansans directly voted for their system of judicial selection. As the state legislature was considering the proposed amendment, an editorial poignantly explained:

> [I]t is not the Legislature that has the final say. Such a plan, which would give the legal profession a part in the choice of state judges, requires a constitutional amendment. The decision facing the Legislature is whether the people of Kansas should be allowed to express themselves on the matter.
>             . . . .
> What the Legislature has to decide now, and all it has to decide, is to put the question on the ballot so that the people may first hear all the facts and all the arguments, pro and con, and then make the final decision.

*Let the People Decide Judges' Choice*, STATE JOURNAL, Feb. 27, 1957. (Appendix B.)

The Kansas voters did get to consider the arguments, "pro and con," for the judicial nominating commission, and they made their final decision in the 1958 general election when they overwhelmingly approved the judicial selection process currently in effect. As the Ninth

5

Circuit recognized in *Kirk*: "The Equal Protection Clause, as long interpreted by the federal courts, does not preclude [Kansas voters] from making that choice." *Kirk*, slip op. at 16664. Thus, just as occurred in *Kirk*, the Motion to Dismiss should be granted and judgment entered for the Defendants.

DATED this 8th day of October, 2010.

THOMPSON RAMSDELL & QUALSETH, P.A.

s/Stephen R. McAllister
Stephen R. McAllister        #15845
Todd N. Thompson             #11194
333 W. 9th Street
P.O. Box 1264
Lawrence, KS  66044
Phone: (785) 841-4554
Fax: (785) 841-4499
stevermac@fastmail.fm
todd.thompson@trqlaw.com
Attorneys for Defendants


OFFICE OF ATTORNEY GENERAL STEVE SIX
Patrick J. Hurley            #17638
Deputy Attorney General
Memorial Hall, 2nd Floor
120 SW 10th Street
Topeka, KS 66612
Phone:  (785) 296-2215
Fax:  (785) 296-6296
patrick.hurley@ksag.org
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 8th, 2010, I electronically filed the foregoing with the Clerk of the Court via the Court's Electronic Filing System, and service was accomplished through the Notice of Electronic Filing on the following Filing Users:

| | |
|---|---|
| James Bopp, Jr. | Richard A. Macias |
| Joseph A. Vanderhulst | 901 North Broadway |
| Josiah S. Neeley | Wichita, KS 67214-3531 |
| Bopp, Coleson & Bostrom | Attorney for Plaintiffs. |
| 1 South Sixth Street | |
| Terre Haute, IN 47807-3510 | |
| Attorney for Plaintiffs | |

                                               Thompson Ramsdell & Qualseth, P.A.
                                               s/Todd N. Thompson

| | |
|---|---|
| Stephen R. McAllister | #15845 |
| Todd N. Thompson | #11194 |

333 W. 9th Street
P.O. Box 1264
Lawrence, KS 66044
Phone: (785) 841-4554
Fax: (785) 841-4499
stevermac@fastmail.fm
todd.thompson@trqlaw.com
Attorneys for Defendants