**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

ROBERT DOOL, et al., )
)
               Plaintiffs, )    **CIVIL ACTION**
)
v. )    No. 10-1286-MLB
)
ANNE BURKE, et al., )
)
               Defendants. )
_____)

## **MEMORANDUM DECISION**

### Introduction

Before the court are the following:

1. Defendants' motion to dismiss (Docs. 19 and 20);

2. Plaintiffs' response (Doc. 23); and

3. Defendants' reply (Doc. 24).

In its memorandum and order of September 14, 2010 (Doc. 18), the court denied plaintiffs' motion for a preliminary injunction. The court was prepared to make a final ruling when the U.S. Court of Appeals for the Ninth Circuit decided Kirk v. Carpeneti, ____ F.3d _____, 2010 WL 3784772 (9th Cir. Sept. 30, 2010). While this court is not obligated to follow decisions of the Ninth Circuit, the facts and legal analysis in Kirk so closely parallel those in this case that the court directed additional briefing. The parties' supplemental memoranda have been filed (Docs. 25 and 26) and the court is now prepared to rule.

The parties and counsel are familiar with the facts, none of which are in dispute, so no useful purpose will be served by an extended factual summary. To the extent it applies here, the court

adopts and incorporates by reference the contents of its memorandum and order of September 14 denying plaintiffs' request for a preliminary injunction.

### Applicable Legal Standards

Defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiffs fail to state a claim on which relief may be granted. The parties are familiar with the standards pertaining to Rule 12(b)(6). At oral argument counsel agreed that the case can be resolved by application of that rule.[1]

### Legal Issues To Be Resolved

Afer carefully reviewing the parties' submissions, it appears that the simplest and most direct route to resolution of the parties' conflicting legal arguments is to decide whether to follow <u>Hellebust v. Brownback</u>, 42 F.3d 1331 (10th Cir. 1994), as plaintiffs urge, or to follow <u>Kirk</u>, as defendants suggest. Obviously, if <u>Hellebust</u> dictates the outcome, this court is obligated to rule for plaintiffs. On the other hand, if <u>Hellebust</u> is not controlling precedent, this court may, but is not required to, give it serious consideration.

### Hellebust

<u>Hellebust</u> initially was decided by Judge John Lungstrum of this court. 824 F. Supp. 1511 (D. Kan. 1993). Again, the parties are well-acquainted with the facts so a detailed summary is not necessary. The central issue was how members of the Kansas State Board of Agriculture ("Board") were elected. The group from which Board members were elected was both large and diverse. <u>See</u> 42 F.3d, n.1.

---

[1]Plaintiffs have filed a motion for summary judgment (Doc. 21), which is appropriate but moot in view of the ruling herein.

But the activities of the Board were even more diverse and far-reaching. Here is the Tenth Circuit's summary:

> Central to its legal conclusion and remedy was the district court's factual finding the Board's reach far extends the fields of agriculture and agribusiness. While the Board insisted the approximately eighty laws which the legislature has entrusted it to enforce are confined to the narrow purposes of the state's agricultural industries, the court found, for example, anyone who pumps gas in Kansas relies on a facility subject to the Board's inspection. "Any commercial pump or scale used in Kansas, such as the ones used to fill cars with gasoline at the local filling station, is subject to inspection by the Board of Agriculture. Kan. Stat. Ann. § 83-206 (Supp. 1992)." Hellebust I at 1514. All meat and dairy inspection is entrusted to the Board whose appointee, the State Dairy Commissioner, has the authority to enter any business premises, conduct inspections, issue subpoenas, and otherwise enforce state regulations on safe dairy and meat products. The Secretary regulates the use of pesticides whether applied to residential lawns or farmlands. The Board's Chief Engineer of the Division of Water Resources controls not only farm and agricultural water uses but also "water rights held by cities, utilities and individuals not connected with agriculture." Id.
>
> With its approximately 330 employees and a budget of about $15 million allocated from the general fund, the district court found the Board "is not simply an agricultural promotion or marketing agency or an entity which deals with matters disproportionately affecting those who elect it. The Board has broad regulatory powers which affect all residents of Kansas daily." Id. at 1513.

Id. at 1332-33.

Judge Lungstrum concluded, after analyzing these functions (and others), that the Board exercised basic, general governmental powers. He held that the statutory procedure of electing Board members violated the Equal Protection Clause. The Circuit agreed:

> Moreover, the constitutional significance of these facts cannot be obscured by the Board's gloss that its powers are limited because it is subject to legislative and executive controls in other areas. The Board's partial dependence on the actions of other state entities does not

> restrict the range of governmental powers it wields. Indeed, in a traditional system in which one branch of government is subject to the checks and balances of another, such dependence is the norm. Consequently, the incidental effect other entities have on the Board does not minimize its authority nor vitiate the requirement for selection reform.
>
> Once a state agency has the authority to affect every resident in matters arising in their daily lives, its powers are not disproportionate to those who vote for its officials. The quality of meat and dairy products consumed by everyone in the state; the accuracy of the scales upon which people are charged for consumer goods; the right to divert and use water; the use of pesticides on residential lawns, city parks, and farmlands are not services disproportionate to those who attend the annual meeting of the Board. Those matters unremittingly influence every person within the State of Kansas. Moreover, as correctly determined by the district court, those matters fall within the state's police powers and comprise part of the normal functions of state government. Thus, although the Board exercises powers that uniquely benefit the agricultural industry, its core governmental powers deprive the Board of the umbra of Ball and Salyer.[2]

Id. at 1334-35.

Plaintiffs argue that defendants have not shown the Ball and Sayler exception to be applicable. They ask this court to look beyond the Commission's function and apply Hellebust because all Kansans, not merely Kansas lawyers, are affected by judicial power of the Kansas Supreme Court and Court of Appeals. This is asking the court to ignore the facts.

The Commission, which exists and functions pursuant to both the Kansas Constitution and Kansas statutes, must be compared to the Board. Otherwise, it makes no sense to consider and apply Hellebust,

---

[2]Ball v. James, 451 U.S. 355, 101 S. Ct. 1811, 68 L.Ed.2d 150 (1981) and Salyer Land Co. v. Tulare Lake Basin Water Stor. Dist., 410 U.S. 719, 93 S. Ct. 1224, 35 L.Ed.2d 659 (1973) which create an exception to the "one man-one vote" rule when applied to units of government having a narrow and limited focus which disproportionately affects the few who are entitled to vote.

as plaintiffs clearly want this court to do. As contrasted with the then-Board's myriad duties, supra, the Commission has but one function: to screen applicants to fill vacancies on the Kansas Supreme Court and Court of Appeals. Unless a vacancy exists, the Board does not function. When it does function, it does not select or appoint a justice or judge; it merely selects and forwards to the governor the names of three applicants it deems best qualified. Plaintiffs try to make it sound as if the governor must appoint one of the three applicants. That is not exactly true. If the governor declines to appoint any of the three, the appointment is made from the same list of applicants by the chief justice of the Kansas Supreme Court. But otherwise, the Commission has no duties, functions and powers which "affect all residents of Kansas daily" such as those of the Board. It has no authority over the administrative operation of the Supreme Court or Court of Appeals. It has no power to set the requirements for admission to the Kansas bar, nor does it regulate or supervise the conduct of Kansas attorneys. It is not subject to legislative or executive controls. It has no staff. To be sure, decisions of the Kansas Supreme Court and Kansas Court of Appeals can affect the daily lives of Kansans, but they are judicial decisions, not decisions of the Commission. (Realistically, the daily affairs of Kansas residents are more directly affected by decisions of local courts, whose judges are either appointed or elected, depending on the type and location of the court.)

No useful purpose will be served by further discussion. Essentially for the reasons put forth by defendants, this court finds that Hellebust is both factually and legally distinguishable and

-5-

therefore declines to conclude that it controls the outcome of this case. Plaintiffs are free to disagree, of course, and realistically, the Tenth Circuit is best suited to decide whether <u>Hellebust</u> controls.

The court now turns to <u>Kirk</u> because, even if it is not controlling, it is very recent authority involving remarkably similar facts and legal issues.

<u>Kirk</u>

As before, it is unnecessary to make a detailed summary of <u>Kirk</u>. Not only are the lawyers familiar with the decision, the lawyers who represented the plaintiffs in <u>Kirk</u> are the same lawyers who represent plaintiffs here. <u>Kirk</u> involves a challenge to Alaska's "merit selection" system for selection of its judges. Alaska also utilizes a commission established in the Alaska Constitution called the Judicial Council, which is composed of seven members. The chief justice of the Alaska Supreme Court chairs the Council. Three lay members are appointed by the governor and confirmed by the legislature and three lawyer members are appointed by the Alaska Bar Association. Apart from the differences in its makeup, the Judicial Council functions exactly as does the Commission except that the Council holds public hearings with respect to applicants. The similarity is not coincidental. Both are based on the so-called Missouri Plan.

As in this case, the plaintiffs in <u>Kirk</u> sought to enjoin the three attorney members of the Council from participating in the selection process for a new supreme court justice. And as here, their argument was that the appointment of the Council's three lawyer members by the bar association violated the Equal Protection Clause. The <u>Kirk</u> plaintiffs supported their case with essentially the same

authority and arguments as are made here, i.e., that judges (at least at the appellate level) must either be popularly elected or appointed by a popularly elected official, presumably the state's governor. They lost at both the district and appellate level.

In response to this court's request, plaintiffs have identified four reasons why Kirk is not entitled to consideration in this case:

1) The Alaska Judicial Council is appointed rather than elected;

2) Kirk is inconsistent with Hellebust;

3) Kirk is inconsistent with prior Ninth Circuit decisions; and

4) Kirk is inconsistent with Supreme Court Equal Protection jurisprudence.

(Doc. 26). Further discussion of Hellebust is unnecessary and, of course, even if Kirk is inconsistent with other Ninth Circuit cases, there is nothing this court can, or should, do about it. Presumably the Kirk plaintiffs made that argument to the Ninth Circuit. If they didn't, they should have.

Plaintiffs argue that ". . . Kirk turned upon the fact that the Council members are appointed rather than elected," citing pages 16656, 16659 and 16662 of the slip opinion (Doc. 26 at 2). This court has carefully reviewed those pages (as well as the entire opinion). On page 16655 and 56, the Ninth Circuit merely recounted what the district court had done:

> The district court first looked at the overall appointment of judicial nominees, and held that the general "one person, one vote" rule first established in legislative redistricting cases does not apply to judicial elections and appointments. The district court then examined the two

-7-

steps preceding the judicial appointment itself: the
election of the Board of Governors by the Alaska Bar
Association, and the Board of Governors' appointment of
attorney members to the Judicial Council. The district
court held that the election of the Board of Governors by
the membership of the Alaska Bar Association did not
violate the Equal Protection Clause because the election
fell within an exception from general election requirements
that is recognized for limited purpose entities. It also
held that the Board of Governors' selection of the attorney
members of the Judicial Council presented no constitutional
issue under election law principles because the members of
the Judicial Council are appointed, rather than elected.

On page 16659, the Ninth Circuit observed:

> Plaintiffs argued in the district court that the vote
> denial cases served to invalidate the selection of the
> members of the Judicial Council. As the district court
> correctly concluded, however, the right to equal voting
> participation has no application to the Judicial Council
> because the members of the Council are appointed, rather
> than elected. See Rodriquez,[3] 457 U.S. at 9-10, 102 S.Ct.
> 2194; Sailors v. Bd. of Educ., 387 U.S. 105, 111, 87 S.Ct.
> 1549, 18 L.Ed.2d 650 (1967).

Here is what the district court "correctly concluded":

> Having concluded that the Board's election passes
> constitutional muster, the next question is whether the
> Board's selection of the attorney members of the Council
> violates Equal Protection principles. Plaintiffs urge that
> there is a violation, but in doing so, they are necessarily
> imposing on the process a judgment that a public election
> is necessary for the appointment of judicial officers. Yet,
> as noted above, the Court specifically held in Sailors that
> the "one person, one vote" principle does not apply where
> non-legislative officers are chosen by appointment, rather
> than by election. Moreover, the delegates to the Alaska
> Constitutional Convention endorsed and the people of the
> State of Alaska ratified the proposition that Alaska state
> judges are to be appointed, rather than elected.
> Plaintiffs have not cited, nor has this court's research
> found, any authority in support of the proposition that a
> state may not appoint, rather than elect, its judiciary.
> Thus, although "one person, one vote" is not relevant to
> appointments, this court also finds the analysis by the

---

[3]Rodriquez v. Popular Democratic Party, 457 U.S. 1 (1982)

-8-

district judges in Bradley[4] and AAVRLDF[5], which found that judicial selection commissions perform non-traditional governmental functions, persuasive. Here, the Council does not "administer normal functions of government" or "enact laws governing the conduct of citizens; rather, among its responsibilities, the Council is charged with evaluating and recommending the most qualified candidates for Alaska's bench based on its assessment of the credentials of members of the bar being considered for vacant judgeships. In this regard, therefore, the Council is a limited purpose entity whose actions disproportionately affect the membership of the Alaska Bar.

For many of the same reasons supporting the limitation on the Board's election, the selection of the Council's attorney members by the Board is rationally related to a legitimate state interest in selecting well-qualified jurists. Moreover, the Alaska Constitution has included checks on the exercise of the appointment powers in the Plan, which save it from defeat under rational basis review. To begin with, some members of the Board are themselves appointed by the Governor. Second, the Board appoints only three of the seven members of the Council. Any candidate for judicial office must therefore secure the vote of at least one other member of the Council in order to be recommended for appointment. Third, the Council's nominations are subject to a final selection by the Governor. Fourth, every person nominated by the Council and selected by the governor must stand for periodic retention elections in which all registered voters participate. These extensive limitations winnow and ultimately defeat the notion central to Plaintiffs' case that it is a select group of citizens – that is, Alaska lawyers – who actually select the Alaska judiciary and in doing so deprive other citizens of equal rights under the law. Rather, the Plan merely allows the public to draw upon the expertise of Alaska's lawyers in the selection of judicial officers, a justification that is rationally related to a legitimate state interest.

Case No. 09-cv-00136-JWS (Doc. 45 at 21-22, D. Alaska 2009).

Finally, the Ninth Circuit stated on pages 16662-3:

---

[4] Bradley v. Work, 916 F. Supp. 1446 (S.D. Ind. 1996)

[5] African-American Voting Rights Legal Defense Fund, Inc. v. Missouri, 994 F. Supp. 1105 (E.D. Mo. 1997)

-9-

Plaintiffs' attempt to characterize Kramer[6], and particularly the footnote 7 sentence referring to equal indirect influence in appointments, as holding that the Equal Protection Clause requires limiting the appointment power to officials who have been popularly elected. They thus contend that Kramer renders the power of Bar-selected Council members unconstitutional. The Kramer footnote does not stand for any such proposition. Kramer illustrated how voters could indirectly influence school board appointments as part of its explanation of why New York's exclusion of certain voters in school board elections was unconstitutional. The Court did not suggest a sweeping new constitutional rule that appointments for all positions in every branch of government must be made by an official who is popularly elected.

In fact, the Supreme Court has already rejected Plaintiffs' far-reaching proposition. In Rodriquez, the Supreme Court considered whether Puerto Rico could delegate to a political party the power to appoint someone to fill an interim vacancy in the Puerto Rico Legislature. 457 U.S. at 3, 102 S.Ct. 2194. Members of the opposing party argued that the appointment mechanism was constitutionally defective because the power to appoint had to be vested in an elected official. Id. at 12, 102 S.Ct. 2194. The Supreme Court disagreed, finding no such constitutional requirement. Id. The Court therefore upheld a regime in which appointments on a temporary basis were made by a body not elected by the "people as a whole."

Having considered the pages cited by plaintiffs, this court is hard-pressed to see how the Ninth Circuit's decision "turned" on appointment as opposed to election of the attorney members of the Council. On the contrary, whether the cited pages are read in isolation or whether the opinion is read as a whole, there is nothing to indicate that either the district court or the Ninth Circuit's decisions would have been for the Alaska plaintiffs had the members of the Council been elected by the members of the bar, as they are in Kansas. This is made clear in the following two paragraphs from the Ninth Circuit's opinion:

---

[6]Kramer v. Union Free School District No. 15, 395 U.S. 621 (1969)

-10-

Moreover, even assuming there is some validity to the general proposition Plaintiffs advance, there is no meaningful violation of it here. In this case, the power vested in the Judicial Council is not to make the final appointment, but to nominate persons for judicial selection. The ultimate power to appoint judges is in the Governor, who is popularly elected by the people of Alaska. In addition, the people have the opportunity to reject the appointment in subsequent retention elections.

Alaska is not the only state to give a significant role to attorneys in the merit selection process. Fourteen other states, including Alabama, Hawaii, Indiana, Iowa, Kansas, Kentucky, Missouri, Nebraska, Nevada, New Mexico, Oklahoma, South Dakota, Vermont, and Wyoming, have systems in which (1) the nominating commission includes attorney members who are chosen neither through popular election nor by a popularly elected government official; and (2) the governor of the state must select a candidate nominated by the commission.

Plaintiffs' final argument, that <u>Kirk</u> is "fundamentally inconsistent with Supreme Court Equal Protection Jurisprudence," is answered to some extent by the just-cited portions of the district and appellate court opinions. Plaintiffs argue here that the Ninth Circuit misunderstood or misconstrued their Equal Protection arguments. They say: "But at no time did the Plaintiffs/Appellants in <u>Kirk</u> ever suggest that every appointing official must be directly popularly elected. Rather, Plaintiffs contended that an appointing official may not be elected subject to the same voter qualifications that would be unconstitutional if placed upon the election of the appointed official." (Doc. 26 at 8). This court does not understand plaintiffs' argument any better than, apparently, did the Ninth Circuit. This court is not <u>required</u> to follow decisions of the Ninth Circuit and would not hesitate to disregard <u>Kirk</u> if it is clear that the decision is contrary to Supreme Court precedent. No such clarity

-11-

appears from plaintiffs' arguments.[7]

## Summary

This court, as did the Ninth Circuit, recognizes that this is but one of several cases ". . . brought by a group of individuals seeking to establish the principle that all participants in the judicial selection process must either be popularly elected, or be appointed by a popularly elected official." (Slip op. at 16647). This court also recognizes that this effort may be somewhat of a "hot topic" based upon reading the various articles cited by the parties here as well as those cited in Kirk. It is not this court's job to weigh in on the debate except to point out that Kansas voters approved the present system and the <u>absence</u> <u>of</u> <u>evidence</u> that Kansas' system has not worked and will not continue to work to ensure that qualified individuals are appointed to the Kansas Supreme Court and the Kansas Court of Appeals.[8]

## Conclusion

Defendants' motion to dismiss (Doc. 19 and 20) is sustained.

IT IS SO ORDERED.

Dated this ___3rd___ day of November 2010, at Wichita, Kansas.


s/ Monti Belot

---

[7]This court notes the Ninth Circuit's comment: "We therefore take this opportunity to publish an opinion dealing with the issues Plaintiffs raise <u>as best as we are able to perceive them</u>." (Slip op. at 16649; emphasis supplied). This court also has experienced some difficulty perceiving plaintiffs' legal arguments.

[8]Yesterday, by margins of 60% or better, Kansas voters retained all four justices of the Kansas Supreme Court who were up for retention.

-12-

Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE